AMY M. KARLIN (Bar No. 150016)
Interim Federal Public Defender
JAMES ANGLIN FLYNN (Bar No. 337608)
Email: james_flynn@fd.org
AYAH A. SARSOUR (Bar No. 340280)
Deputy Federal Public Defenders
321 East 2nd Street
Los Angeles, CA 90012-4202
Telephone: (213) 894-2854
Fax: (213) 893-0081

Attorneys for Defendant
JAIME HECTOR RAMIREZ

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>*Plaintiff*,<br><br>v.<br><br>JAIME HECTOR RAMIREZ,<br><br>*Defendant*. | Case No. 5:25-cr-264-SSS<br><br>**Defendants' Renewed Motion to Dismiss and to Disqualify**<br><br>Hearing Date: Oct. 13, 2026<br>2:00 p.m. |

# TABLE OF CONTENTS


INTRODUCTION ........................................................................................ 1

ARGUMENT ............................................................................................ 2

I. The Court cannot review and validate the hypothetical delegation. ................ 2

I.A. The hypothetical delegation is not before the Court. ........................ 2

I.B. Essayli has not actually disavowed anything. .................................. 3

I.C. The decision not to use a power *is* the exercise of authority. ........... 4

I.D. The government's track record since *Ramirez* further undermines its hypothetical. ........................................................................ 5

II. If reviewable, the hypothetical delegation is invalid. ............................ 8

III. *Jackson* confirms that there are no existing, valid delegations. ............ 11

III.A. The first-assistant designation confers no powers. ......................... 11

III.B. The special-attorney appointment confers no powers. ..................... 12

III.C. The human-resources letter attempts a wholesale delegation that is invalid twice over. ............................................................ 13

III.D. Essayli cannot exercise powers delegated to other attorneys. ........ 14

IV. The Appointments Clause continues to bar Essayli's service. .................. 15

V. The Appropriations Clause also bars Essayli's service. ........................... 16

VI. The Court should disqualify Essayli from participating in or supervising this prosecution. ............................................................................. 18

VI.A. The government presented this argument in *Jackson*, and the Ninth Circuit rejected it. ................................................................ 18

VI.B. Even ignoring *Jackson*'s affirmance of the Nevada disqualification order, one would still be warranted here. .............. 20

VII. The Court should dismiss the indictment. ........................................... 21

# TABLE OF AUTHORITIES

**Cases**

*Bullock v. U.S. Bureau of Land Mgmt.*, 489 F. Supp. 3d 1112 (D. Mont. 2020) .......... 5, 8, 9

*In re Grand Jury Subpoenas to Office of N.Y. State Att'y Gen.* (*Grand Jury*), No. 26-156, 2026 WL 2450485 (2d Cir. 2026) .......... 3, 9, 16, 21

*New Process Steel, L.P. v. NLRB*, 560 U.S. 674 (2010) .......... 10, 11

*United States v. Bundy*, 968 F.3d 1019 (9th Cir. 2020) .......... 21, 23

*United States v. Giraud*, 160 F.4th 390 (3d Cir. 2025) .......... 3, 11, 17, 21

*United States v. Jackson*, 2026 WL 2387099 (9th Cir. Aug. 17, 2026) .......... *passim*

*United States v. Naviwala*, 825 F. Supp. 3d 451 (D.N.J. 2026) .......... 10, 16, 17, 23

*United States v. Nixon*, 418 U.S. 683 (1974) .......... 15

*United States v. Ramirez* (*Ramirez II*), 812 F. Supp. 3d 1011 (C.D. Cal. 2025) .......... 12, 15

*United States v. Ramirez*, 807 F. Supp. 3d 1086 (C.D. Cal. 2025) .......... 12, 18, 21, 22

*United States v. Stevens*, 559 U.S. 460 (2010) .......... 5

*United States v. Weyhrauch*, 544 F.3d 969 (9th Cir. 2008) (per curiam) .......... 6, 7

*Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457 (2001) .......... 2, 5

*Widakuswara v. Lake*,
832 F. Supp. 3d 55 (D.D.C. 2026)........9

**Statutes**

18 U.S.C. § 2518........14

18 U.S.C. § 3057........4

18 U.S.C. § 3731........4, 5, 6, 8

18 U.S.C. § 5032........4

18 U.S.C. § 6003........4

26 U.S.C. § 6103........4, 11

28 U.S.C. § 508........14

28 U.S.C. § 509........17

28 U.S.C. § 510........10, 15, 16, 17

28 U.S.C. § 515........10, 15, 16, 17

28 U.S.C. § 533........17

28 U.S.C. § 545........16

**Court Filings**

Appellant's Principal Brief (*Jackson* OB), *United States v. Jackson*,
No. 25-6214 (9th Cir. Oct. 31, 2025), ECF No. 12........13, 20, 21

Brief for Appellant, *United States v. Giraud*,
No. 25-2635, 2025 WL 2688540 (3d Cir. Sept. 12, 2025), ECF No. 25........18

Certification of United States Attorney, *United States v. Castro*,
No. 5:25-cr-13-KK (C.D. Cal. Oct. 10, 2025), ECF No. 38........7

Certification of United States Attorney, *United States v. Skinner*,
No. 5:25-cr-44-JGB (C.D. Cal. Aug. 22, 2025), ECF No. 26........7

Government's Ex Parte Application for Order Permitting Disclosure [of] Tax Returns and Return Information to Defendants, *United States v. Bilzerian*, No. 2:24-cr-569-MCS (C.D. Cal. Nov. 26, 2025), ECF No. 159 .......... 12

Government's Opening Brief 3–4, *United States v. Skinner*, No. 25-5357 (9th Cir. Feb. 2, 2026), ECF No. 10 .......... 7

Government's Unopposed Motion to Voluntarily Dismiss Appeal, *United States v. Castro*, No. 25-6423 (9th Cir. Dec. 15, 2025), ECF No. 8 .......... 7

Government's Unopposed Motion to Voluntarily Dismiss Appeal, *United States v. Pierce*, No. 25-7385 (9th Cir. Dec. 15, 2025), ECF No. 6 .......... 8

Notice of Appeal, *United States v. Pierce*, No. 2:25-cr-266-MEMF (C.D. Cal. Nov. 24, 2025), ECF No. 40 .......... 8

Order, *United States v. Naviwala*, No. 2:24-cr-99 (D.N.J. Jan. 28, 2026), ECF No. 303 .......... 19, 20

Order, *United States v. Pierce*, No. 25-7385 (9th Cir. Dec. 10, 2025), ECF No. 3 .......... 8

## INTRODUCTION

Following the Ninth Circuit's published decision in *United States v. Jackson*, Mr. Ramirez renews his motion for dismissal and for a disqualification order equivalent to the one *Jackson* affirmed. As in that now-affirmed order, Bilal Essayli should be barred "from supervising the prosecution of the defendant[]" in this case. 2026 WL 2387099, at *2 (9th Cir. Aug. 17, 2026).

The government offers two theories for salvaging Essayli's continued service. First, it says Essayli should be permitted to continue serving because "he does not purport to exercise" all the U.S. Attorney's powers. Dkt. 66, at 6. But the government does not explain what it means to "not purport to exercise" something or how that not-purporting could have any legal significance. The government appears to be asking this Court to consider and approve a hypothetical delegation to Essayli of some subset of the U.S. Attorney powers. But the Ninth Circuit in *Jackson* declined to rule on future, hypothetical delegations of narrower powers, and this Court should as well. 2026 WL 2387099, at *13. Future hypotheticals cannot save a wholesale delegation that is invalid, here and now, under *Jackson*.

Second, the government claims the Ninth Circuit did not reach the question whether Chattah (and, thus, Essayli) is "somehow ineligible to prosecute cases or supervise others" because of the invalid delegation. Dkt. 66, at 3. But the government presented *exactly* that argument to the Ninth Circuit, using almost verbatim language. *Jackson* rejected the theory that Chattah possessed prosecutorial powers (supervisory or otherwise) despite the invalidity of her delegation. It therefore affirmed the order barring her from exercising powers that she does not possess. Essayli's service is indistinguishable, and *Jackson* requires the same result for him.

## ARGUMENT

### I. The Court cannot review and validate the hypothetical delegation.

The government presents a hypothetical scenario that the Court need not and should not resolve: would a narrower delegation to Essayli pass muster if it conferred on him fewer than all the powers of a U.S. Attorney? The answer is no. *Infra* § II. But the Court should not even reach that question, because no such delegation has been made. Courts do not test and validate hypothetical delegations, especially when the hypothetical turns on voluntary self-restrictions that the delegee says he is following but has never disclosed.

#### I.A. The hypothetical delegation is not before the Court.

That hypothetical question of a narrower delegation is not presented by this case, because no such delegation has ever been made. The only purported delegation to Essayli was the July 2025 attempt to confer all U.S. Attorney powers on him. As discussed below, *Jackson* confirms that delegation was invalid. *Infra* § III.

Essayli cannot salvage that invalid delegation by voluntarily disavowing (or not-quite-disavowing, *see infra* § I.B) some portion of the invalidly delegated powers. Courts have long refused to uphold invalid delegations just because the Executive Branch proclaims that it will not use the objectionable portions. *See, e.g.*, *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 472 (2001) ("We have never suggested that an agency can cure an unlawful delegation of legislative power by adopting in its discretion a limiting construction of the statute.").

Essayli can only serve, if at all, under a delegation of authority that has in fact been made to him. Just as he lacked the authority to delegate powers to himself, he lacks the authority to edit a delegation after the fact to save it from invalidity. For this

reason alone, the Court should follow the same approach as all three circuits and decline to consider the government's hypothetical. *Jackson*, 2026 WL 2387099, at *13 ("We need not decide what kinds of more limited delegations might be permissible…."); *In re Grand Jury Subpoenas to Office of N.Y. State Att'y Gen.* (*Grand Jury*), No. 26-156, 2026 WL 2450485, at *13 (2d Cir. 2026) ("To be clear, we have no occasion today to delineate when a partial delegation becomes an impermissible one. The delegation in the instant case presents no such difficulty…."); *United States v. Giraud*, 160 F.4th 390, 406 (3d Cir. 2025) (declining to consider "a more dispersed delegation … because those are not the facts of this case").

**I.B. Essayli has not actually disavowed anything.**

To make matters worse, the government does not commit fully to its narrowing hypothetical. Essayli has not in fact disavowed any powers. Instead, the government tells us that Essayli "does not purport to exercise 'all of the functions of [the U.S. Attorney's] office'" and, since this Court's original *Ramirez* decision, has not "purported to exercise" all those powers. Dkt. 66, at 6–7.

The government's representation is hedged along two dimensions—and fatally so. First, the government never says *which* powers Essayli would be disavowing in its hypothetical scenario. Its proffered carveout does not, for example, cover all the non-delegable powers. The government cites the three non-delegable powers listed in *Jackson*,[1] but it does not say that Essayli has disavowed any particular one of them. Dkt. 66, at 6–7. Nor does the government say anything about the non-delegable

---

[1] Those three are appeal certifications under 18 U.S.C. § 3731, juvenile-prosecution certifications under 18 U.S.C. § 5032, and applications for tax-return disclosure under 26 U.S.C. § 6103. *See Jackson*, 2026 WL 2387099, at *12.

U.S. Attorney powers beyond *Jackson*'s examples.[2]

Second, this not-quite-disavowal is transitory. The government's representation is limited to the present moment and the past; it is boldly silent about the future. Essayli does not "purport" to exercise all the U.S. Attorney powers, today. But he does not concede that he lacks the authority to exercise any powers, and he has made no commitment to refrain from doing so going forward.

Combined with the failure to identify particular powers, this sets up a non-justiciable moving target. The government's theory appears to be that as long as Essayli is not exercising all the powers at any given moment, his invalid delegation can be saved. Today the unused power could be § 3731 certification. Tomorrow, he could pick that power back up and "purport" not to be exercising a different one.

### I.C. The decision not to use a power *is* the exercise of authority.

Although the government identifies instances where the § 3731 power was exercised by certifying appeals, Dkt. 66, at 7, that tells only half the story. The Supreme Court has explained that a delegee also exercises a power when he *declines* to use it. Dealing with an invalid legislative delegation to the executive in *American Trucking*, it held that the "very choice of which portion of the power to exercise … would *itself* be an exercise of the forbidden legislative authority." 531 U.S. at 473.

For that reason, Essayli's attempt to edit the powers delegated to him by someone else is "internally contradictory." *Id.* His post-delegation "voluntary self-denial has no bearing" on whether the delegation itself was valid. *Id.*; *see also United States v.*

[2] These include requests for grants of immunity under 18 U.S.C. § 6003 and bankruptcy investigations under 18 U.S.C. § 3057.

*Stevens*, 559 U.S. 460, 480 (2010) ("We would not uphold an unconstitutional statute merely because the Government promised to use it responsibly."). This principle applies with particular force where, as discussed in the next section, Essayli and his office have continued to seek the results of the U.S. Attorney's non-delegable powers while conspicuously skipping the step where the exercise of that power gets documented.

### I.D. The government's track record since *Ramirez* further undermines its hypothetical.

The government urges the Court to rely on its assertion that Essayli has not "purported to exercise" some unspecified powers in the period since this Court's original *Ramirez* decision. Dkt. 66, at 7. The government does not explain what it thinks is the legal significance of this purporting or not-purporting. It appears to be something more complicated than simply "not exercising" the powers. *Cf. Bullock v. U.S. Bureau of Land Mgmt.*, 489 F. Supp. 3d 1112, 1127 (D. Mont. 2020) ("[T]he Executive Branch cannot use wordplay to avoid constitutional and statutory requirements.").

The record of Essayli and his office's approach to non-delegable powers in that time should make the Court even more skeptical of this not-quite-disavowal. Interlocutory appeal certifications under 18 U.S.C. § 3731 are the one power the government has discussed in this regard. Dkt. 66, at 6–7. Certification is jurisdictional, and the Ninth Circuit applies § 3731's "strict statutory requirement of personal certification by the United States Attorney." *United States v. Weyhrauch*, 544 F.3d 969, 974 (9th Cir. 2008) (per curiam). In rare cases like recusals, another official must be "properly designated the acting United States Attorney as to [the] matter for purposes of

making the requisite certification." *Id.* at 975. The Department's general delegation statutes are not "a blanket authority to substitute just any DOJ attorney into the certification role Congress envisioned." *Id.* at 974.

Essayli's track record does not show a disavowal of this power. In two of the government's cited cases, *Castro* and *Skinner*, Essayli improperly signed the certificates in his invalid acting U.S. Attorney capacity.[3] True, those certificates predated *Ramirez*, and the government ultimately dismissed those appeals. *See* Dkt. 66, at 7. But it left *Castro* pending for nearly two months after *Ramirez* made clear that Essayli lacked authority to sign the certificate. In that time, it said nothing to the Ninth Circuit about the invalid certification, nor did it identify that as a basis for dismissal.[4] More conspicuously, in *Skinner*, the government proceeded to brief its appeal and asserted jurisdiction expressly based on Essayli's certification.[5] It did so four months after *Ramirez*, never withdrew or amended its brief, and never said a word to the Ninth Circuit about Essayli not-purporting to exercise the very power he affirmatively invoked for appellate jurisdiction. *Id.*

Worse still, in *Pierce*, the government took a § 3731 appeal—a month after

---

[3] Certification of United States Attorney, *United States v. Skinner*, No. 5:25-cr-44-JGB (C.D. Cal. Aug. 22, 2025), ECF No. 26, at 12; Certification of United States Attorney, *United States v. Castro*, No. 5:25-cr-13-KK (C.D. Cal. Oct. 10, 2025), ECF No. 38, at 2.

[4] Government's Unopposed Motion to Voluntarily Dismiss Appeal, *United States v. Castro*, No. 25-6423 (9th Cir. Dec. 15, 2025), ECF No. 8.

[5] Government's Opening Brief 3–4, *United States v. Skinner*, No. 25-5357 (9th Cir. Feb. 2, 2026), ECF No. 10.

*Ramirez*—without any certification at all.[6] In other words, Essayli sought to exercise this non-delegable power without doing so explicitly, achieving the same result without a paper trail.

The government's description of *Pierce* asserts that it voluntarily dismissed the case for lack of certification. Dkt. 66, at 7. But that is not the whole story. The government did not approach the Ninth Circuit to come clean, dismiss the appeal, and communicate the view it now hints at (but does not quite say) about Essayli's authority. Instead, *the Ninth Circuit itself* noticed the defect and ordered the government to cure it or else dismiss.[7] *Cf. Weyhrauch*, 544 F.3d at 973 ("Moreover, … the government made no effort to cure or justify the absence of the United States Attorney's certification here until we raised the issue sua sponte…."). Even then, the government's subsequent motion did not mention the lack of certification or Essayli's not-purporting.[8]

* * *

All this slipperiness underscores why courts do not engage in the testing of hypothetical delegations. The hypothetical here lacks testable boundaries; there is just the vague assertion that the delegation's scope is (for today) something less than the entirety of a U.S. Attorney's authority. And even assuming the government has some bounds in mind, its track record reveals several attempts to work around them. At the very least, the government demonstrated in *Pierce* that it is not policing its own use of

---

[6] Notice of Appeal, *United States v. Pierce*, No. 2:25-cr-266-MEMF (C.D. Cal. Nov. 24, 2025), ECF No. 40.

[7] Order, *United States v. Pierce*, No. 25-7385 (9th Cir. Dec. 10, 2025), ECF No. 3.

[8] Government's Unopposed Motion to Voluntarily Dismiss Appeal, *United States v. Pierce*, No. 25-7385 (9th Cir. Dec. 15, 2025), ECF No. 6.

non-delegable powers, leaving that task to the Ninth Circuit's sua sponte monitoring. *Cf. Bullock*, 489 F. Supp. 3d at 1126 ("The [delegation] Order provides no mechanism to enforce or track its limitation of authority.").

The government asks this Court to let that failed self-policing continue, to entrust Essayli with determining from moment-to-moment which powers he purports to exercise. But the delegee does not get to set the bounds of his own delegation. He certainly cannot set secret limits, subject to change at his discretion. And he should not be heard to argue, based on his own say-so, that those undisclosed limits comply with the FVRA and the Constitution.

## II. If reviewable, the hypothetical delegation is invalid.

Even assuming Essayli could and did retroactively edit his delegation, it would still fail under *Jackson* for three independent reasons.

**1.** The FVRA bars this perfunctory attempt to carve out some of a vacant office's powers. *Jackson* noted that "some delegations" in the past had used a "boilerplate limitation" excluding "any non-delegable powers." 2026 WL 2387099, at *12. But even that express narrowing—by the authorized delegator, not the delegee—was "an [unsuccessful] attempt to avoid running afoul of the FVRA." *Id.* (alteration in *Jackson*) (quoting *Bullock*, 489 F. Supp. 3d at 1126).

Under this rule, Essayli's self-narrowing fails a fortiori. He lacks the authority to make or edit his delegation. 28 U.S.C. §§ 510, 515(a). And even then, he has not disavowed all non-delegable powers, as in the *Bullock* scenario. Instead, he is merely refraining from *purporting* to exercise some undisclosed subset of them. Boilerplate limitations do not cut it even when they are explicit, broad, and fixed. When the limitations are implied, narrow, and unstable, they must necessarily fail.

**2.** The hypothetical delegation is invalid because it is still "so comprehensive that [Essayli] functionally occupies the vacant PAS office." *Grand Jury*, 2026 WL 2450485, at *13; *see also id.* at *15 (calling this "the exclusivity provision's determinative inquiry"). Courts have not permitted the FVRA's exclusivity provision to be circumvented by delegating "nearly all" of a vacant office's powers rather than all of them. *Widakuswara v. Lake*, 832 F. Supp. 3d 55, 66 (D.D.C. 2026) (invalidating delegation of 95% of vacant office's powers).

The government maintains that "*all* of the U.S. Attorney's functions and duties are delegable." *Jackson*, 2026 WL 2387099, at *12; *accord Grand Jury*, 2026 WL 2450485, at *13. It maintains that it can give Essayli the entire bundle of sticks, and he can wield any of them so long as there is at least one stick still in his pocket. Plus, he can choose and change that one stick for himself.

The Court should reject this evasion of the FVRA. Essayli functionally occupies the vacant office by wielding virtually every stick, while straining to articulate how exactly it is that at least one remains unused. Dkt. 66, at 6 (emphasis added) ("does not purport to exercise").

In the government's view, Congress foolishly enacted an exclusivity provision that can be defeated by hiding just one stick. The government cites no text or case law for its theory, and Supreme Court precedent contradicts it. If Congress had intended the exclusivity provision to be so weak—to be an "easily surmounted technical obstacle[]"—"it could have said so in straightforward language." *New Process Steel, L.P. v. NLRB*, 560 U.S. 674, 681, 687 (2010). Like the "Rube Goldberg-style delegation mechanism" in *New Process Steel*, the government's maneuver is "bizarre," both in its structure and in its too-cute circumvention of Congress's statutory purpose.

*Id.* at 682. Without at least "some evidence" that Congress intended a just-one-stick loophole, the Court should reject it. *Id.*

**3.** It is not really the case that the unwielded sticks have been sitting motionless in Essayli's pocket. For example, while Essayli might not purport to be using the U.S. Attorney's power over tax-return disclosures, the Department has in at least one case delegated that non-delegable power to his subordinate.[9] The wholesale delegation of the U.S. Attorney's powers is invalid under the FVRA, even when the government divides those powers across multiple people. *United States v. Naviwala*, 825 F. Supp. 3d 451, 495 (D.N.J. 2026).[10]

The government cannot hide behind the notion that Congress must have intended *someone* to exercise each of the U.S. Attorney's powers during a vacancy. It raised that same argument in *New Process Steel*, but the Supreme Court disagreed. An agency may "understandabl[y] desire to keep its doors open despite vacancies," and the government here may understandably desire to keep wielding all the U.S. Attorney's powers. 560 U.S. at 688. But when Congress places limits on an agency's authority after a vacancy, it is making a "decision" to close some doors, at least temporarily. *Id.* And that decision "must be given practical effect," notwithstanding the "costs that delay

[9] *See* 26 U.S.C. § 6103(i)(1); Government's Ex Parte Application for Order Permitting Disclosure [of] Tax Returns and Return Information to Defendants, *United States v. Bilzerian*, No. 2:24-cr-569-MCS (C.D. Cal. Nov. 26, 2025), ECF No. 159.

[10] The cited *Naviwala* decision rejected the government's attempt to divide the U.S. Attorney's powers across three temporary officials. Mr. Naviwala has appealed only a later order, concerning a subsequent appointment by the district court, and the government's motion to dismiss that appeal is pending. *See United States v. Naviwala*, No. 26-1896 (3d Cir.).

imposes" on the government. *Id.*; *see also Giraud*, 160 F.4th at 406 ("But even if that might be a consequence of Congress's enactment of the FVRA exclusivity provision, we are not tasked with resolving such policy concerns.").

In this instance, those costs are self-inflicted. Congress had no obligation to depart from the Constitution's advice-and-consent default, but it did so, balancing its constitutional prerogatives with its interest in maintaining Department operations after a vacancy. Congress has made temporary appointments exceedingly easy for a President and Attorney General to accomplish. But in the 19 months since the vacancy, the President has not attempted a nomination. And although the government has touted the President's usage of his § 3345(a)(2) and (3) powers, he eschewed those no-brainer alternatives here. *See, e.g.*, Appellant's Principal Brief 25–26 (*Jackson* OB), *United States v. Jackson*, No. 25-6214 (9th Cir. Oct. 31, 2025), ECF No. 12 (relying on 31 designations by President Trump under § 3345(a)(2) and (3)).

## III. *Jackson* confirms that there are no existing, valid delegations.

Turning to non-hypotheticals, *Jackson* confirms that Essayli has no authority to take any governmental action at all. The government has identified four actions that could have vested him with some power—for instance, the power to supervise prosecutions—but none of them achieved that result.

### III.A. The first-assistant designation confers no powers.

The Attorney General designated Essayli as first assistant in July 2025. Dkt. 33-3. In that order, she opined that Essayli would "have authority to serve as Acting United States Attorney" under the FVRA, *id.*, but she was incorrect about that, *Jackson*, 2026 WL 2387099, at *5–7. Essayli received no powers by operation of the FVRA, because he was designated long after the automatic-elevation provision triggered. *Id.*

The government and the Court have at times suggested that the first assistant role itself comes with some set of powers, like supervising the office. In *Ramirez*, for example, this Court ruled that it had "no basis to preclude Essayli from performing the lawful duties of a FAUSA." *United States v. Ramirez*, 807 F. Supp. 3d 1086, 1112 (C.D. Cal. 2025); *see also id.* at 1114–15 ("Moreover, Essayli remains the FAUSA and may perform the functions and duties of *that* office."); *United States v. Ramirez* (*Ramirez II*), 812 F. Supp. 3d 1011, 1016 (C.D. Cal. 2025) ("the authority he wields as FAUSA"). The government urges the Court to adhere to that ruling and permit Essayli to exercise "the lawful duties *of a FAUSA*." Dkt. 66, at 3.

The problem is that a first assistant has no lawful duties. Designation as "first assistant" is a "regulatory label" for "ordering succession under the FVRA, [and] it does not confer additional powers." Dkt. 49, at 5; *accord* Dkt. 57, at 9–10; Dkt. 60, at 4–5. This absence of authority contrasts with other first assistant roles, like the Deputy Attorney General, that do come with their own set of statutory powers. *See* 28 U.S.C. § 508(a) (designating the Deputy Attorney General as first assistant to the Attorney General); 18 U.S.C. § 2518(7) (assigning wiretap powers to the Deputy Attorney General).

The Ninth Circuit has now made this point crystal clear: "The only function of the first assistant qua first assistant is to be the Acting U.S. Attorney in the event of a vacancy." *Jackson*, 2026 WL 2387099, at *12. Because it does not confer any authority absent a vacancy, the delegation "is not meaningful here" and "does not affect [the] analysis of [Essayli]'s delegated powers." *Id.*

### III.B. The special-attorney appointment confers no powers.

Along with that designation, the Attorney General also appointed Essayli as a

special attorney. Dkt. 33-3. But she delegated no powers to him in that capacity. Her only mention of Essayli's authority was the incorrect remark about his automatic elevation as first assistant under the FVRA. *Id.*

As *Jackson* held, this was insufficient to confer any powers on Essayli in his capacity as special attorney. 2026 WL 2387099, at *12 ("The Attorney General's order does not identify any specific duties Chattah may perform or identify any powers delegated to Chattah in her capacity as a special attorney, as opposed to the powers that the Attorney General assumed the FVRA would provide her as the Acting U.S. Attorney.").

**III.C. The human-resources letter attempts a wholesale delegation that is invalid twice over.**

As the defense has previously explained, Dkt. 38, at 19; Dkt. 49, at 5; Dkt. 57, at 9 n.2, the only attempt to delegate powers to Essayli as special attorney was made by a human-resources staffer in a July 2025 letter, Dkt. 33-4. That employee had no authority to redelegate the Attorney General's powers, 28 U.S.C. §§ 510, 515(a), and the attempted delegation is invalid on that basis alone. The Court has yet to address this argument, and we renew it again here.

But even if an employee could redistribute the Attorney General's powers, the wholesale delegation here is invalid under *Jackson*. The employee's letter used language identical to the delegation *Jackson* rejected. *See* 2026 WL 2387099, at *2. It identified no specific powers and included no limitations, not even boilerplate. *See id.* at *12. The Attorney General's "authority to delegate does not permit him to vest all of the functions and duties of a vacant office in a single person." *Id.* at *13. Here, the employee attempted to do just that, and under *Jackson*, that attempt failed.

**III.D. Essayli cannot exercise powers delegated to other attorneys.**

The government's fallback position is that, even setting aside the July 2025 actions, Essayli somehow still holds a delegation. But for this point, the government relies on delegations to *other* lawyers in the Department. It should go without saying that Essayli cannot freely borrow his colleagues' powers.

The government starts by explaining that "every attorney in [the Central District] Office still exercises the delegated power of the Attorney General." Dkt. 66, at 7. The government does not substantiate this assertion, and it never has: its prior filings cite only the statutes contemplating that such a delegation *could* be made. *See, e.g.*, Dkt. 33, at 16–17; Dkt. 50, at 3–4.

For the sake of argument, we assume that the Attorney General has at some point in the past validly delegated some prosecutorial duties to the office's assistant U.S. Attorneys. But Essayli is not an assistant U.S. Attorney, and his role is outside the U.S. Attorney's Office. The Attorney General appointed him a special attorney in her office under 28 U.S.C. § 515, not as an assistant U.S. Attorney in the Central District's office under § 542. The government itself has emphasized the distinction. *E.g.*, Dkt. 59, at 9 (relying on "the Attorney General's ability to appoint non-AUSA Department of Justice lawyers"). Even assuming some historical delegation of power to assistant U.S. Attorneys in the office, the government has not established a delegation to Essayli.

The power to supervise prosecutions illustrates the point. No one disputes that the Attorney General has this power and can delegate it. And again, we assume that at some point along the way, the Attorney General validly delegated that supervisory

power to various chiefs and managers in the Central District office.[11] If so, the government would be correct that those individuals "exercise[] the delegated power of the Attorney General" and are authorized "to prosecute cases or supervise others." Dkt. 66, at 7. But to exercise that same supervisory power, Essayli would need a valid delegation, too.

## IV. The Appointments Clause continues to bar Essayli's service.

The Court previously held that Essayli's service does not violate the Appointments Clause because the Attorney General has appointment authority drawn impliedly from a combination of 28 U.S.C. §§ 509, 510, 515, and 533. *Ramirez II*, 812 F. Supp. 3d at 1015 (citing *United States v. Nixon*, 418 U.S. 683, 694 (1974)).

The defense understands the Court's ruling and respectfully preserves for further review the argument that no such appointment authority exists between the lines of the U.S. Code. Congress must speak clearly when it deviates from the Constitution's advice-and-consent default, and that clear-statement rule cannot be satisfied by implication. *See* Dkt. 57, at 6–8; Dkt. 60, at 6–7.

Because the Attorney General's implied appointment authority is not tethered to any particular statute or office, it results in an unbounded universe of "amorphous office[s]," *Naviwala*, 825 F. Supp. 3d at 509, without any clear powers—and without any apparent limits. But even assuming that such an authority exists, it cannot be

---

[11] The defense recognizes the grim possibility that this assumption is incorrect. It may be that the Department has long operated based on statutes that merely authorize Attorney General delegations, without any actual delegating. It may be, for example, that section chiefs have long exercised supervisory authority based on the mere possibility that the Attorney General *could* delegate supervisory power to them under § 510. For now, the Court can leave that can of worms alone: either way, no valid delegation has been made to Essayli.

construed to authorize appointing someone who functionally occupies a different office for which Congress *did* impose strict limits. *See id.* at 508–17. As *Jackson* reminded, Congress does not hide amorphous, limitless elephants in mouseholes. 2026 WL 2387099, at *8. Especially so where the elephant would enable the government to evade a complex, carefully crafted vacancies regime designed to protect Congress's constitutional Appointments role. *See Grand Jury*, 2026 WL 2450485, at *13 ("Limitless and indefinite discretion was precisely what the Appointments Clause was designed to check and what the FVRA sought to curtail.").

**V. The Appropriations Clause also bars Essayli's service.**

When the government appealed the disqualification of Alina Habba in New Jersey, it criticized the district court there for suggesting that the FVRA violation could be cured by dividing up and delegating just portions of the U.S. Attorney's powers, rather than consolidating them in a single person. "It is not evident why that distinction would be material," the government argued, calling the curative suggestion "a reductio ad absurdum of [the district court's] ruling, not a defense of it." Brief for Appellant, *United States v. Giraud*, No. 25-2635, 2025 WL 2688540, at *45 (3d Cir. Sept. 12, 2025), ECF No. 25.

That absurdity is now the government's official position. Dkt. 66, at 6-7. But as the New Jersey district court explained, that position raises new concerns under the Appropriations Clause. "When Congress appropriates funding for a certain purpose, the Executive is not free to reassign it unless Congress has given it the power to do so." *Naviwala*, 825 F. Supp. 3d at 492. In New Jersey after *Giraud*, the Attorney General divided the U.S. Attorney's powers across three people and claimed that they were exercising the authority of the Attorney General herself—not the unavailable authority

of the U.S. Attorney. But prosecutions those three supervised were still funded by appropriations to the U.S. Attorney: the government was trying to have it one way for Appointments purposes and the other way for Appropriations. *See id.* at 467–68, 492–93. Ultimately, that district court disqualified all three of the delegees under the FVRA and barred them from supervising cases in the district. *Id.* at 531.

The same contradiction appears to undercut the government's position in this district, too. Without the authority he purported to wield as acting U.S. Attorney, Essayli is (at most) exercising the delegated authority of the Attorney General out of her Main Justice office. Even if that satisfies the FVRA and the Appointments Clause, it creates a whac-a-mole problem under the Appropriations Clause if the funding for Essayli-supervised cases has not been validly transferred or re-appropriated to the budget for the Attorney General's activities. *See id.* at 492–93.

The defense respectfully requests that, if the Court does not bar Essayli's continued service, it order the government to answer for this apparent conflict. As was required in New Jersey, the government should be ordered to "identify the source of the appropriations that have funded and will continue to fund litigation occurring in the District … while led by" Essayli in his non-U.S. Attorney capacity. Order 1, *United States v. Naviwala*, No. 2:24-cr-99 (D.N.J. Jan. 28, 2026), ECF No. 303. And in particular, the government "should address whether" its attorneys and staff in the Central District "were compensated using appropriations earmarked for 'necessary expenses of the Offices of the United States Attorneys,' or 'expenses necessary for the legal activities of the Department of Justice.'" *Id.* at 1 n.1.

### VI. The Court should disqualify Essayli from participating in or supervising this prosecution.

The government's attempt to avoid an order barring Essayli's continued service relies on a severe mischaracterization of the issues litigated in *Jackson*. But even if *Jackson* did not mandate such an order, it would follow from first principles: Essayli has no governmental powers, so he cannot prosecute anything.

#### VI.A. The government presented this argument in *Jackson*, and the Ninth Circuit rejected it.

After the Nevada district court barred Chattah's continued participation in and supervision of cases in that district, the government sought appellate relief in *Jackson*. It argued to the Ninth Circuit that even if the FVRA does not permit an appointment to "perform all the functions and duties of an office," Chattah could still serve by exercising "some or all of the office's delegable duties." *Jackson* OB 39. As support for that theory about exercising a subset of powers, it repeatedly cited the same proposition in this Court's *Ramirez* decision. *Id.* at 46–49. That is, the government explicitly placed *Ramirez* before the Ninth Circuit as its own theory on appeal. And it warned that if the Ninth Circuit affirmed the Nevada order, it "would end the common practice … of having principal deputies or other individuals perform the delegable powers of a vacant PAS office in a non-acting capacity." *Id.* at 56.

The Ninth Circuit rejected the government's arguments, and it affirmed the order barring Chattah from participating in or supervising prosecutions. *Jackson*, 2026 WL 2387099, at *11–14. And it went one step further: it rejected the subset theory specifically, on multiple grounds. First, it was purely hypothetical: Chattah, like Essayli, had only the invalid wholesale delegation. *Id.* at *12. Second, even a

boilerplate limitation would not have salvaged the invalid delegation. *Id.* And third, the government's attempt to draw a line around some subset of powers was "meaningless," given the government's view that the U.S. Attorney has no non-delegable powers. *Id.*

The government thus lost the argument that the Nevada district court "erroneously disqualified Ms. Chattah from participating in or supervising these prosecutions." *Jackson* OB 3. It also lost the related argument that, even without FVRA authority, Chattah "does not become uniquely unable—among all the other DOJ lawyers in the office—to supervise other lawyers, or to participate in the prosecution of criminal cases." *Id.* at 55. In fact, under the disqualification order *Jackson* affirmed, Chattah *is* uniquely prohibited from doing things that others in the office may be authorized to do. (They may have valid delegations, but she does not.)

But now the government comes to this Court and makes the identical argument using essentially the same words and sentence structure: "Holding that Essayli … cannot serve as Acting U.S. Attorney does not mean—and logically cannot mean—that he is somehow ineligible to prosecute cases or supervise others. He has the same authority to do so as anyone else in the office." Dkt. 66, at 7. The government is asking this Court to accept a theory that the Ninth Circuit rejected, nearly verbatim, less than three weeks ago.

How can the government claim that *Jackson* "says nothing to the contrary" about Essayli's continued service, when *Jackson* squarely affirmed a prohibition on Chattah's? The government is conflating the remedial issue that it appealed and the Ninth Circuit affirmed (disqualification) with the one the Ninth Circuit did not reach (dismissal).

*Jackson* did reach the disqualification remedy, expressly, over the government

arguments described just above: "[W]e affirm the district court's order disqualifying Sigal Chattah, the putative Acting U.S. Attorney for the District of Nevada, from supervising the prosecutions of the defendants in these cases." 2026 WL 2387099, at *2. There is no indication in *Jackson* that a lesser remedy would have been adequate to address Chattah's lack of any delegated powers, and as discussed below, it would not be.

**VI.B. Even ignoring *Jackson*'s affirmance of the Nevada disqualification order, one would still be warranted here.**

Indulging the counterfactual, suppose *Jackson* had come out another way: by rejecting the government's FVRA theory—but then remanding without weighing in one way or the other about prohibiting Chattah's continued service. *Contra Jackson*, 2026 WL 2387099, at *2.

This Court would be left with the following scenario: *Jackson* invalidates Essayli's purported delegation. He has a special-attorney appointment, but no one has validly delegated any powers to him. He *is* therefore uniquely unlike his colleagues who (as presumed above) are exercising powers that have been lawfully delegated to them.

Essayli's supervision of this case exemplifies his exercise of prosecutorial powers he does not possess. Looking back in time, the government indicted Mr. Ramirez under Essayli's invalid authority at a time when he had no prosecutorial powers at all. Looking forward in time, he still lacks them, and he should be ordered to stop exercising what does not belong to him.

For over a year, this illegal exercise of prosecutorial powers has violated Mr. Ramirez's constitutional rights and undermined the legitimacy of the criminal-

justice system in this district. In line with *Jackson*, two other Courts of Appeals have now affirmed the common-sense remedy that this illegality should be stopped. *Giraud*, 160 F.4th at 406–07 (affirming prospective disqualification); *Grand Jury*, 2026 WL 2450485, at *16 & n.6 (same, after the government offered only a "conclusory" argument against disqualification).

The defense respectfully requests that this Court issue a disqualification order equivalent to the ones *Jackson* and *Giraud* expressly affirmed. A proposed order to that effect accompanies this motion.

## VII. The Court should dismiss the indictment.

Mr. Ramirez previously sought dismissal to achieve the three remedial goals outlined by the Ninth Circuit: "(1) to implement a remedy for the violation of a recognized statutory or constitutional right; (2) to preserve judicial integrity by ensuring that a conviction rests on appropriate considerations validly before a jury; and (3) to deter future illegal conduct." Dkt. 10, at 56 (quoting *United States v. Bundy*, 968 F.3d 1019, 1030 (9th Cir. 2020)).; *accord* Dkt. 38, at 33.

When the Court ruled last year, it reasoned that the "proceedings have not reached a stage in this court where sanctions for egregious government conduct such as those imposed in *Bundy* are appropriate." *Ramirez*, 807 F. Supp. 3d at 1112. The Court explained that "no court had disapproved" of the government's appointments maneuver when Essayli took on the acting title. *Id.* at 1111. And the Court placed special significance on the fact that no appellate court had yet weighed in. *Id.* at 1112. Critically, at that stage, the law of this case was that Essayli was still properly exercising prosecutorial powers that had been validly delegated to him—just not in the correct capacity. *Id.* at 1112–14.

Each one of those circumstances has now changed, and Mr. Ramirez respectfully suggests we have arrived at a new stage warranting more effective remedies. Five district courts have rejected the government's backfilling theory for first assistants under the FVRA. Three circuits have now done the same, rejecting *both* that backfilling theory and the improper wholesale delegations. And *Jackson* changes the law of the case: Essayli had no authority to prosecute Mr. Ramirez on the day he was indicted, and he has had no authority to supervise this prosecution in the year since then.

In *Ramirez*, the Court explained that the government did not act flagrantly by testing its legal theories under the "complicated" vacancies regime and "cho[osing] to resist efforts to disqualify Essayli." 807 F. Supp. 3d at 1112. But the government is no longer testing a novel theory on a blank legal slate. More than a dozen federal judges have rejected these efforts, and the government is not remotely deterred. As the judicial opinions pile up, so do the infected districts, which now amount to at least *sixteen*.[12] *See* Dkt. 38, at 2 (in September 2025, raising the concern that if the government's theories were accepted, the government could "replace the entire organizational chart with these never-confirmed, FVRA-ineligible shadow officials"). In the face of more and more losses in court, that expansion shows that the remedies employed by the courts to date have been insufficient to deter this on-going illegality under *Bundy*.

In New Jersey, Chief Judge Brann initially shared the view expressed in *Ramirez* that the government had a prerogative to test "arguable legal issues" such that dismissal

[12] The defense's analysis identified invalid service as acting or de facto U.S. Attorneys in the following districts: Central California, Delaware, Eastern and Western Kentucky, New Mexico, Northern New York, Nevada, Rhode Island, Eastern and Western Texas, Vermont, Eastern and Western Virginia, Eastern and Western Washington, and Eastern Wisconsin.

was not warranted. *Naviwala*, 825 F. Supp. 3d at 527. But back in March, he offered a final warning. The government had "acknowledg[ed] that it has several undisputedly legal methods readily available to fill the Office," and the Court announced it "will not countenance another novel attempt to game Congress's statutory scheme, which I have by now spelled out in painstaking detail." *Id.* As the Court put it, the "work of the USAO-NJ is simply too important to continue throwing novel leadership plans at the wall to see what will stick." *Id.* And he concluded that should the government make another attempt, "any deficiency in its method will be taken as bad faith and result in dismissal of cases *at any stage*." *Id.*

Here, the government is no longer even throwing its theories against the courthouse wall. Rather, it asks the Court and the defense to trust that there are some undisclosed limits on Essayli's authority that render it valid. The government is playing shadow games with the most consequential powers a government can wield against its population. And it is asking this Court to accept arguments that a higher court just rejected in a binding decision. The buck should stop here, and it should stop now. The indictment should be dismissed.

Respectfully submitted,

AMY M. KARLIN
Interim Federal Public Defender

Dated: September 4, 2026 By: */s/ James Anglin Flynn*
JAMES ANGLIN FLYNN
AYAH A. SARSOUR
Deputy Federal Public Defenders

*Attorneys for Defendant*
*Jaime Hector Ramirez*