AMY M. KARLIN (Bar No. 150016)
Interim Federal Public Defender
JAMES ANGLIN FLYNN (Bar No. 337608)
Email: james_flynn@fd.org
AYAH A. SARSOUR (Bar No. 340280)
Deputy Federal Public Defenders
321 East 2nd Street
Los Angeles, CA 90012-4202
Telephone: (213) 894-2854
Fax: (213) 893-0081

Attorneys for Defendant
JAIME HECTOR RAMIREZ

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>*Plaintiff*,<br><br>v.<br><br>JAIME HECTOR RAMIREZ,<br><br>*Defendant*. | Case No. 5:25-cr-264-SSS<br><br>**Defendant's Opposition to the Government's Ex Parte Application to File a Surreply** |

# TABLE OF CONTENTS


I. The government has already had the opportunity to brief these issues, and its proposed surreply adds to confusion over its shifting positions........... 1

I.A. The government's shifting theories post-*Jackson*. ........................... 1

I.B. The non-disclosure of the July order. ............................................... 2

I.C. The Blanche orders and signatures. .................................................. 3

I.D. The abeyance and stay requests. ....................................................... 3

I.E. The not-purporting. ............................................................................ 4

I.F. The duplicative discussion of politics................................................ 4

The government's ex parte application says that it seeks to "streamline the issues," Dkt. 76, at 2, but it streamlines nothing. Instead, the proposed surreply includes even *further* changes in the government's positions and introduces new misrepresentations. The surreply should be rejected for that reason alone.

Even for issues where a surreply could conceivably be helpful, this one fails at the task. It does take up open questions, like: who signed Mr. Blanche's name on two orders with very different signatures? But it offers no answers. Dkt. 76-2, at 3 (calling doubts about authenticity "puzzling," "misplaced," and "immaterial"—but conspicuously never saying why the signatures differ or why one order is unnumbered).

The government wants to have the first and last written word on the defense's motion. For the following reasons, the Court should deny the application.

## I. The government has already had the opportunity to brief these issues, and its proposed surreply adds to confusion over its shifting positions.

The government has had more than adequate opportunities to explain itself. Each of the issues addressed in the proposed surreply was either raised in prior defense filings—to which the government had the chance to respond—or else was newly raised in opposition by the government itself. Rather than streamlining or clarifying, the proposed surreply again moves the targets and materially misrepresents the government's previous filings. The government has not justified the need for a surreply, and it has only further demonstrated the "reckless disregard and, hence, flagrant misconduct" that warrants dismissal. *United States v. Bundy*, 968 F.3d 1019, 1041 (9th Cir. 2020).

### I.A. The government's shifting theories post-*Jackson*.

The proposed surreply offers no new information on the government's moving-

target tactics. Dkt. 76-2, at 2. The government does not explain why it could not have presented the new delegation as part of its original theory, nor why it first zig-zagged to the hypothetical-delegation theory. Dkt. 75, at 21. If a new delegation "takes time," the government could have (but did not) ask to extend the briefing schedule to accommodate that process. Dkt. 76-2, at 2. If anything, the surreply confirms the government's recklessness and bad faith: it reveals that the government anticipated a new delegation and intentionally chose not to disclose that fact until after the defense's next filing. *Id.* at 2–3. That choice sent the parties and Court on an unnecessary and confusing detour. Dkt. 75, at 21–22.

**I.B. The non-disclosure of the July order.**

A surreply is not warranted to further brief the non-disclosure of the July 2026 order appointing Essayli as an assistant U.S. Attorney. The government had the opportunity to explain that non-disclosure when it belatedly revealed the order's existence. *See* Dkt. 74, at 10 n.9. Its choice not to do so does not justify a surreply.

At any rate, the surreply does not clarify the government's behavior: it just confirms the government's recklessness and bad faith. Dkt. 76-2, at 3. The government says it "made sense" to omit any mention of the July order until the new delegation issued. *Id.* That is a confession to sandbagging: the government knew of two material facts when it filed its notice—the July order and the forthcoming new delegation—and it intentionally chose to wait to disclose them until a later stage of the briefing. The proposed surreply nowhere explains why the government could not have just been candid and forthcoming all along.

The government also falsely represents how the government has used the July order. The proposed surreply says that the "government has never relied on that

appointment or put it in issue." Dkt. 76-2, at 1 n.1. But the government has done exactly that repeatedly.[1] To deny that now further demonstrates bad faith.

### I.C. The Blanche orders and signatures.

The proposed surreply offers no new information about the non-matching signatures and the unnumbered order. Dkt. 76-2, at 3. It calls the defense's questions about the authenticity of the orders "puzzling," "conspiratorial," "misplaced," and "immaterial." *Id.* But it does not actually dispute that two different people signed the orders, nor explain why one of the orders is missing a number. Assuming at least one of those people was not Mr. Blanche, the government does not explain how that person had the authority to issue the order—especially not without disclosing the substitution.

### I.D. The abeyance and stay requests.

The proposed surreply moves the targets again, denying that the government sought to hold these motions in abeyance pending *Jackson*. Dkt. 76-2, at 4–5. It even criticizes the defense for briefing abeyance issues, which the government says it didn't raise. *Id.* Instead, it claims all it sought was to stay any adverse ruling. *Id.*

The government's representation is false. It repeatedly asked this court to hold the motions in abeyance, not merely to stay any resulting order. Dkt. 74, at 21 ("Held in Abeyance"); *id.* ("hold the motions in abeyance"); *id.* at 23 ("hold these motions in abeyance"); *id.* ("hold these motions in abeyance"). The defense's reply was directly responsive, and there is no cause for a surreply. Dkt. 75, at 2–8.

---

[1] Dkt. 74, at 13 (arguing "there is no basis to order" Essayli to stop serving, including because "he has since been appointed an Assistant U.S. Attorney"); *id.* at 17 (arguing that Essayli can perform "the lawful duties of a … supervisory AUSA" because he is "the seniormost AUSA in the office"); *id.* at 19 (arguing that Essayli can "serve as an AUSA with supervisory authority").

Any briefing on a stay of the ruling on this motion should proceed once that ruling exists and can be analyzed under the stay factors. It is premature to brief that issue now, about a hypothetical ruling and in this extraordinary ex parte posture.

**I.E. The not-purporting.**

The government affirmatively raised *Skinner* and the other suppression appeals, and it asked this Court to rely on its track record in those cases to resolve the dispute *in this case*. Dkt. 66, at 6–7. Now, it says those are different cases, so the Court should not consider them here. Dkt. 76-2, at 5–6. The government cannot have it both ways.

Regardless, no surreply is warranted. The defense raised these concerns about government misbehavior in detail in its motion, Dkt. 68, at 5–8, 10, and the government chose not to respond to those concerns, Dkt. 74, at 4 n.3. Instead, in a footnote parenthetical, it trivialized the defense's concerns as "complaining." *Id.* That the government now belatedly wants to try to defend its behavior is no cause for a surreply.

At any rate, the surreply does not actually address the issue discussed in the defense's reply. *See* Dkt. 75, at 19–20. The government again deflects by pretending the issue with its conduct in *Skinner* was the timing of the dismissal. Dkt. 76-2, at 5–6; *see also* Dkt. 74, at 4 n.3. But as the defense has twice explained, the issue was the *Skinner* opening brief's affirmative invocation of the Essayli certificate—*at the same time* that Essayli claims he was "not purporting" to exercise that certification power—without disclosing that contradiction to the Ninth Circuit. Dkt. 68, at 6; Dkt. 75, at 19–20. The surreply sheds no light on the government's reckless invocation and non-disclosure.

**I.F. The duplicative discussion of politics.**

The government closes by repeating it allegations that the defense is motivated by

politics rather than law. Dkt. 76-2, at 6–7. The government's contentions consist mostly of quotations from its already-filed opposition. *Id.* But there is no need to file a surreply just to repeat those points.

Nor does the surreply engage with the decidedly legal framework under which the defense contends dismissal is warranted by the government's recklessness. *See* Dkt. 68, at 21–23 (citing *Bundy*, *Ramirez*, and *Naviwala*); *United States v. Naviwala*, 825 F. Supp. 3d 451, (D.N.J. 2026) (considering, in the bad-faith analysis, the government's choice to advance "another novel attempt to game Congress's statutory scheme" rather than "[c]ompromise"). For the defense, this is not about Mr. Essayli: we would raise the same challenge to anyone installed invalidly as de facto U.S. Attorney. And we have repeatedly agreed that Essayli could lead the office if validly appointed. Dkt. 10, at 14, 27, 30; Dkt. 49, at 7; Dkt. 57, at 1, 8, 10, 14–16; Dkt. 60, at 7–11; Dkt. 75, at 6, 12, 22. It is the government that is fixated on its choice of Essayli. To choose him, the government must use a lawful means, rather than create a de facto U.S. Attorney. The surreply nowhere explains why those lawful means cannot be used now.

Mr. Ramirez respectfully requests that the Court deny the ex parte application.

Respectfully submitted,

AMY M. KARLIN
Interim Federal Public Defender

Dated: October 7, 2026

By: */s/ James Anglin Flynn*
JAMES ANGLIN FLYNN
AYAH A. SARSOUR
Deputy Federal Public Defenders

*Attorneys for Defendant*
*Jaime Hector Ramirez*