**CARL GORDON**
**UNIVERSITY OF THE 'HOOD®**
8306 Wilshire Blvd., No. 792
Beverly Hills, CA 90211
Tel. (310) 926-3939
Email: universityofthehood@gmail.com
Proposed Amicus Curiae, Pro Se

FILED
CLERK, U.S. DISTRICT COURT
10/7/2026
CENTRAL DISTRICT OF CALIFORNIA
BY EC DEPUTY
DOCUMENT SUBMITTED THROUGH THE ELECTRONIC DOCUMENT SUBMISSION SYSTEM

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>*Plaintiff*,<br><br>v.<br><br>JAIME HECTOR RAMIREZ,<br><br>*Defendant*. | **CASE No. 5:25-cr-264-SSS-1**<br><br>**MOTION OF CARL GORDON FOR LEAVE TO FILE AMICUS CURIAE BRIEF**<br><br>Hearing on Defendants' Renewed Motion: **October 13, 2026, 2:00 p.m.**<br><br>Before Senior United States District Judge J. Michael Seabright |

# TABLE OF CONTENTS


| Section | Page |
| --- | --- |
| Motion of Carl Gordon for Leave to File Amicus Curiae Brief | 2 |
| **Proposed Amicus Curiae Brief** | |
| I. Interest of the Proposed Amicus and Requested Consideration | 3 |
| II. *Jackson* and the Parties' Current Briefing Frame the Authorization Question | 6 |
| A. Appointment and delegated authority require separate examination | 6 |
| B. The Government acknowledges *Jackson's* continuing precedential force | 6 |
| C. The defendants' reply distinguishes official position from actual supervisory authority | 7 |
| D. Historical acts require examination of the authority effective at the time | 8 |
| III. The August 14, 2025, FCA Filing Identifies the Governmental Act at Issue | 9 |
| A. The filing identifies Essayli, Harris, and Webster in their official capacities | 9 |
| B. The filing contains a declination and a conditional consent to dismissal | 10 |
| C. The subsequent ruling and reconsideration proceedings | 10 |
| IV. The September 8, 2026 Memorialization Records the Authorization Discussion and Webster's Reference to Judge Seabright | 11 |
| A. The initial conference occurred from approximately 10:27 to 10:31 a.m. | 11 |
| B. Webster raised the September 3 order entered September 8 | 12 |

| Section | Page |
| --- | --- |
| C. Webster called back and referred to Senior Judge J. Michael Seabright | 13 |
| D. The email requested clarification concerning communications and the written record | 14 |
| V. The November 2013 FCA Record Establishes the Harris–Birotte Professional Connection | 15 |
| A. The original filing identifies their respective positions | 15 |
| B. Harris participated in presenting the governmental consent to dismissal | 15 |
| C. Relevance to Gordon's impartiality objection | 16 |
| VI. The October 2023 Declination and Subsequent Defendant Status Establish the Harris–Staton Litigation Connection | 17 |
| A. The earlier FCA case was assigned to Judge Staton and referred to Magistrate Judge Rocconi | 17 |
| B. Harris and Staton subsequently became defendants in Gordon's litigation | 17 |
| C. Harris's defendant status preceded the August 2025 authorization | 18 |
| D. The conflict objection and delegation inquiry address separate aspects of the same act | 19 |
| VII. The Filing and Entry Chronology Explains Gordon's Continuing Request for Adjudication | 20 |
| A. The motion and judicial-notice request were submitted September 21 | 20 |

| **Section** | **Page** |
|---|---|
| B. The September 30 order authorized filing of documents received September 21 | 20 |
| C. Gordon's concern is the practical effect on his opportunity to obtain a response | 21 |
| D. The authorization question remains identifiable despite the procedural dispute | 22 |
| VIII. *Tangipa*, the Appeals, and the Supreme Court Applications Show the Continuing Connection Among the Proceedings | 23 |
| A. The *Tangipa* submission previously presented the Staton overlap | 24 |
| B. The appellate proceedings have distinct origins | 25 |
| C. The September 22 motion and October 2 reply continue the interim-relief dispute | 26 |
| D. The renewed Supreme Court applications were distributed for October 9 | 26 |
| IX. Request for Leave and Purpose of Placing the Information in the Record | 27 |
| Certificate of Compliance | 29 |
| Proof of Service | 30 |

# TABLE OF AUTHORITIES

## Cases and Court Filings


| Authority | Pages |
|---|---|
| *Tangipa v. Newsom*, No. 2:25-cv-10616-JLS-WLH-KKL (C.D. Cal.), Gordon's proposed intervention motion (Dec. 19, 2025) | 24 |
| *United States ex rel. Daniel Ojeda v. Alex Gladkov, D.D.S., Inc.*, No. 2:09-cv-09348-DMG-SH (C.D. Cal.), Dkt. 30 (Nov. 12, 2013) | 16–17 |
| *United States v. Jackson*, Nos. 25-6214 and consolidated appeals (9th Cir. Aug. 17, 2026) | 2, 4, 7–8, 17, 27 |
| *United States v. Ramirez*, No. 5:25-cr-00264-SSS-1 (C.D. Cal.), Government's September 23, 2026 opposition, Dkt. 74 | 7 |
| *United States v. Ramirez*, No. 5:25-cr-00264-SSS-1 (C.D. Cal.), defendants' September 30, 2026 reply, Dkt. 75 | 7–9, 14, 20, 27 |


## Statutes


| Authority | Page |
|---|---|
| 5 U.S.C. § 3345(a)(1) | 7 |
| 5 U.S.C. § 3347(b) | 7 |
| 28 U.S.C. § 455(a) | 17 |
| 28 U.S.C. § 2284 | 26 |
| 31 U.S.C. § 3730(b)(1) | 11 |
| 31 U.S.C. § 3730(b)(4)(B) | 11 |

| Authority | Page |
|---|---|
| 31 U.S.C. § 3730(c)(2)(A) | 11 |
| 31 U.S.C. § 3730(c)(3) | 11 |


**Regulations and Administrative Directives**


| Authority | Page |
|---|---|
| 28 C.F.R. § 0.45(d) | 12 |
| Civil Division Directive No. 1-15, Appendix to 28 C.F.R. Part 0, Subpart Y | 12 |


**Rules**


| Authority | Page |
|---|---|
| Federal Rule of Civil Procedure 54(b) | 12 |
| Federal Rule of Civil Procedure 60(b)(6) | 12 |
| Federal Rule of Civil Procedure 60(d)(3) | 12 |
| Central District of California Local Rule 7-18(b) | 12 |
| Central District of California Local Rule 11-6.1 | 29 |


**Other Referenced Proceedings**


| Proceeding | Pages |
|---|---|
| Supreme Court Application No. 26A36 | 2, 4, 25–27 |
| Supreme Court Application No. 26A167 | 2, 4, 25–27 |

**MOTION OF CARL GORDON FOR LEAVE TO FILE AMICUS CURIAE BRIEF**

Carl Gordon, proposed amicus curiae, respectfully moves for leave to appear as amicus curiae and to file the proposed brief attached to this motion. Gordon submits this motion and proposed brief together for service on counsel for all parties.

Gordon is a pro se plaintiff and relator in related federal civil proceedings. His proposed brief presents documentary records concerning governmental authorization, including the August 14, 2025, False Claims Act declination and his September 8, 2026, memorialization of a conference with Assistant United States Attorney Cory L. Webster. That memorialization identifies David M. Harris as the official Gordon understood Webster to identify as authorizing the declination and records Webster's subsequent reference to Senior Judge J. Michael Seabright.

The proposed brief explains how those records bear on the appointment, delegation, and supervisory-authority questions addressed in United States v. Jackson, the Government's September 23, 2026 opposition, and the defendants' September 30, 2026, reply. It also supplies the documented professional and litigation relationships necessary to understand Gordon's authorization and impartiality objections.

Two renewed applications arising from Gordon's related proceedings, Supreme Court Nos. 26A36 and 26A167, are pending before the Supreme Court and have been distributed for its October 9, 2026, conference. That approaching conference gives immediate significance to an accurate presentation of the connected records.

Gordon respectfully requests that the Court grant leave to file the attached proposed amicus curiae brief.

Dated: October 7, 2026

Respectfully submitted,

Carl Gordon

Carl Gordon
Proposed Amicus Curiae, Pro Se
8306 Wilshire Blvd., No. 792
Beverly Hills, CA 90211
universityofthehood@gmail.com
(310) 926-3939

## I. INTEREST OF THE PROPOSED AMICUS AND REQUESTED CONSIDERATION

Carl Gordon respectfully submits this proposed amicus brief while two renewed applications arising from his related proceedings—Supreme Court Nos. **26A36 and 26A167—are pending before the Supreme Court of the United States and have been distributed for its October 9, 2026, conference**. That approaching conference gives immediate significance to an accurate presentation of the governmental authorization questions and the connected judicial and litigation records described below.

Gordon's submission concerns identifiable governmental acts and documented relationships within proceedings that have reached both the Ninth Circuit and the Supreme Court. He offers those records in connection with the appointment, delegation, and supervisory-authority issues addressed in *United States v. Jackson*, the Government's September 23, 2026, opposition, and the defendants' September 30, 2026, reply. His documentary contribution identifies a particular governmental filing, the official identified as authorizing it, and the operative date on which that authority must be examined.

Gordon is the plaintiff and relator in *United States ex rel. Gordon v. Newsom*, No. 2:25-cv-04705-AB-SSC. His records include the Government's August 14, 2025, declination and his September 8, 2026, email contemporaneously memorializing his conversations with Assistant United States Attorney Cory L. Webster. In that email, Gordon memorialized his understanding that Webster identified David M. Harris as the official who authorized the declination. Earlier federal court documents also establish that Harris served as an Assistant United States

Attorney in the United States Attorney's Office for the Central District of California, then headed by United States Attorney André Birotte Jr.

Gordon also presents the documented professional and litigation relationships involving David M. Harris, Judge André Birotte Jr., Magistrate Judge Margo A. Rocconi, and Judge Josephine L. Staton. Those records explain Gordon's interest and the authorization and impartiality objections he has presented in his civil proceedings.

The records identify Harris's participation in Gordon's earlier FCA proceeding, *The United States of America et al. v. Gavin Newsom et al.*, No. 2:23-cv-06727-JLS-MAR, assigned to Judge Josephine L. Staton and referred to Magistrate Judge Margo A. Rocconi. Harris and Staton subsequently became defendants in Gordon's separate litigation, No. 2:24-cv-05384-MWF. The resulting appeal was opened in the United States Court of Appeals for the Ninth Circuit on February 25, 2025, as No. 25-1190. Gordon's September 8, 2026 email also contemporaneously memorializes his understanding that Webster identified Harris as the official who authorized the August 14, 2025, declination in Gordon's current FCA case, No. 2:25-cv-04705-AB-SSC.

Gordon's current FCA proceeding, No. 2:25-cv-04705-AB-SSC, is assigned to Judge André Birotte Jr. On October 7, 2026, the Ninth Circuit confirmed receipt of Gordon's notice of appeal from that proceeding and opened appellate case No. 26-6605. The case-opening entry was entered at 4:52 p.m., followed by a briefing schedule at 4:57 p.m. The schedule sets Gordon's opening brief for November 16, 2026, and the appellees' answering brief for December 16, 2026.

These records connect the earlier FCA proceeding assigned to Staton and referred to Rocconi, Harris's subsequent defendant status, his asserted authorization of the declination in the current proceeding before Birotte, and the resulting appellate proceedings. Gordon presents each official's documented role separately as part of the chronology supporting his authorization and impartiality objections.

Gordon seeks leave to place this information in the record and provide counsel with an organized account of the supporting documents and connected proceedings. His civil record supplies context and a concrete example of the authorization question. Requests to vacate judgments in his civil cases remain before the courts exercising jurisdiction over those proceedings.

His current FCA appeal, No. 26-6605, adds a newly opened appellate proceeding to that account. The earlier FCA assignment and referral records, the subsequent defendant and appellee records, and the current appeal identify the procedural connections among the matters described here.

The particular contribution of this submission is its identification of a governmental act, an asserted authorizing official, and the chronology in which the act occurred. Gordon's record permits examination of what authority was exercised, who authorized its exercise, and what appointment, delegation, or other operative authority supported that action on the relevant date.

That chronology also permits examination of Harris's adverse-party status before the August 14, 2025, filing. The assignment records involving Staton and Rocconi, together with the professional-relationship records involving Birotte and Harris, provide the distinct factual context for Gordon's judicial impartiality objections.

## II. JACKSON AND THE PARTIES' CURRENT BRIEFING FRAME THE AUTHORIZATION QUESTION

### A. Appointment and delegated authority require separate examination

*United States v. Jackson*, Nos. 25-6214 and consolidated appeals (9th Cir. Aug. 17, 2026), addresses the validity of the appointment and authority exercised through that appointment.

The decision holds that the Federal Vacancies Reform Act does not permit filling an existing vacancy by newly designating a first assistant and invoking automatic succession under 5 U.S.C. § 3345(a)(1). Slip op. at 15–20. Its delegation analysis also rejects the use of general delegation authority to vest all functions and duties of the vacant office in one person. *Id.* at 30–34; 5 U.S.C. § 3347(b).

The decision recognizes authority to delegate certain functions and duties and leaves questions concerning more limited delegations unresolved. Slip op. at 32–34. That distinction makes the particular instrument, particular function, and particular exercise of authority relevant.

An official's appointment, a delegation to that official, authority to authorize another attorney's action, and the action ultimately performed are identifiable steps. The validity and scope of each step must be assessed against the governing authority and actual record.

### B. The Government acknowledges Jackson's continuing precedential force

The Government's September 23, 2026, opposition acknowledges that the stay of the *Jackson* mandate left its legal holding precedential and binding on district courts throughout the Ninth Circuit. *Ramirez*, Dkt. 74, memorandum at 9.

The opposition relies on a revised September 23 delegation and discusses both the powers conferred and the powers expressly excluded. *Id.* at 10–11. It also recognizes that the question whether a particular statutory duty may be delegated can be resolved in a case presenting that duty. *Id.* at 16.

The defendants' September 30 reply likewise distinguishes a stay of the mandate from suspension of the opinion's precedential effect. Dkt. 75 at 2–3. The reply identifies the Ninth Circuit's refusal to eliminate the opinion's precedential effect and argues that *Jackson* remains binding during the period in which Supreme Court review is sought.

Those positions support an inquiry directed to the actual governmental act and its source of authority. The relevant questions include the identity of the official exercising the power, the function exercised, the authorization supporting that exercise, and the date on which the authority became effective.

**C. The defendants' reply distinguishes official position from actual supervisory authority**

The defendants' September 30, 2026, reply argues that an attorney's seniority or designation within the United States Attorney's Office does not itself establish supervisory authority. It maintains that the relevant powers must actually be conferred through an applicable source of authority. Dkt. 75 at 9–10.

The reply also distinguishes authority to participate as a line prosecutor from authority to supervise other prosecutors. *Id.* at 17–18. These are the defendants' arguments concerning Essayli's role in the criminal proceeding. They identify a distinction relevant to understanding Gordon's separate documentary example:

the authority of the attorney submitting a filing and the authority of the official authorizing that filing require identification.

Gordon's August 14, 2025 FCA record identifies Webster as the signing attorney and Harris as Chief of the Civil Division. Gordon's September 8, 2026, memorialization identifies Harris as the official Gordon understood Webster to identify as authorizing the submission. Together, those records identify the participants and the authorization question; the governing instruments must establish the source and scope of their respective authority.

Harris's title identifies his represented position. Gordon's inquiry concerns the operative authority supporting the particular action attributed to him.

**D. Historical acts require examination of the authority effective at the time**

The defendants' reply separately examines the July appointment and the September delegation. Dkt. 75 at 13–15. It also distinguishes prospective authority under the new delegation, to the extent valid, from arguments relying on the earlier wholesale delegation. *Id.* at 8–9.

Gordon's documentary example concerns a filing made on August 14, 2025. The revised delegation discussed in the Government's opposition is dated September 23, 2026. Examination of the earlier act therefore requires identification of the authority effective on August 14, 2025, together with any claimed legal effect of a subsequent instrument.

This chronology supplies the connection between Gordon's submission and the pending dispute. Both involve the need to identify the actual authority supporting a particular exercise of governmental power rather than infer that authority solely from an official's title or position.

For counsel reviewing Gordon's record, the inquiry is concrete: what appointment, delegation, supervisory authority, or other operative authorization supported the August 14, 2025, action identified below?

## III. THE AUGUST 14, 2025, FCA FILING IDENTIFIES THE GOVERNMENTAL ACT AT ISSUE

### A. The filing identifies Essayli, Harris, and Webster in their official capacities

On August 14, 2025, the United States filed its Notice of Election to Decline Intervention and Request to Unseal the Case in *United States ex rel. Gordon v. Newsom*, No. 2:25-cv-04705-AB-SSC. Dkt. 21.

Page 1 identifies Bilal A. Essayli as Acting United States Attorney, David M. Harris as Assistant United States Attorney and Chief of the Civil Division, and Cory L. Webster as Assistant United States Attorney.

Page 5 bears Webster's electronic signature under an attorney identification block again naming Essayli and Harris.

These pages are reproduced in Exhibit A to Gordon's September 21, 2026 request for judicial notice.

The attorney identification block establishes the positions represented in the filing, and Webster's electronic signature identifies the submitting attorney. Gordon's September 8 memorialization supplies the additional account concerning Harris's authorization. Read together, these records identify the factual inquiry that corresponds to the supervisory-authority distinction argued in

the defendants' reply: what authority supported the submission, and what authority supported Harris's authorization of it?

**B. The filing contains a declination and a conditional consent to dismissal**

The August 14 filing declines intervention. It also states that the United States consents to dismissal if the relator elects not to proceed with counsel. Dkt. 21 at 5.

These portions of the filing identify distinct governmental acts. The False Claims Act addresses an election declining intervention under 31 U.S.C. § 3730(b)(4)(B), the relator's litigation role following declination under § 3730(c)(3), written governmental consent to dismissal under § 3730(b)(1), and governmental dismissal over a relator's objection under § 3730(c)(2)(A).

The authorization inquiry should identify the act being examined and the authority required for that act. Gordon's objection concerns the authority underlying the filing and its use in the proceedings that culminated in dismissal of his FCA claims.

The distinction also permits counsel to evaluate the precise governmental decision involved. A declination and consent to dismissal have separate statutory descriptions, even when included within the same filing.

**C. The subsequent ruling and reconsideration proceedings**

Judge Birotte dismissed Gordon's FCA claims on November 26, 2025. Gordon subsequently sought reconsideration and vacatur of that dismissal.

His September 21, 2026, motion invokes Rule 54(b), Rule 60(b)(6), Local Rule 7-18(b), and Rule 60(d)(3). The concurrent request for judicial notice supplies records supporting the appointment, authorization, and related objections.

The civil docket identifies these submissions as Dkts. 93 and 94. Gordon's challenges therefore appear in identifiable filings directed to a particular ruling and supported by specified records.

The authorization question forms part of Gordon's challenge to the governmental action preceding the dismissal. His related conflict and impartiality objections identify additional circumstances he asks the responsible courts to adjudicate.

On October 7, 2026, the Ninth Circuit opened appeal No. 26-6605 from the current district proceeding. That appellate opening adds the current FCA appeal to the procedural history without determining the merits or scope of Gordon's objections.

## IV. THE SEPTEMBER 8, 2026 MEMORIALIZATION RECORDS THE AUTHORIZATION DISCUSSION AND WEBSTER'S REFERENCE TO JUDGE SEABRIGHT

### A. The initial conference occurred from approximately 10:27 to 10:31 a.m.

Gordon's September 8 email identifies an initial telephone conference with Webster from approximately 10:27 a.m. to 10:31 a.m.

At the outset, Gordon raised the written question he had supplied concerning the United States' August 14, 2025, FCA declination and the authority for that action under 28 C.F.R. § 0.45(d) and Civil Division Directive No. 1-15, Appendix to 28 C.F.R. Part 0, Subpart Y.

The email memorializes Gordon's understanding of Webster's response as follows:

As I understood your response, you stated that David M. Harris had the authority and authorized you to submit the United States' August 14, 2025, declination.

Gordon expressly asked Webster to correct his understanding if that statement did not accurately reflect the response.

This contemporaneous account identifies Harris as the official whom Gordon understood Webster to identify as authorizing the filing. The actual source and scope of that authorization remain questions to be evaluated against the governing records.

**B. Webster raised the September 3 order entered September 8**

The same memorialization states that Webster referred to the Court's September 3, 2026 order, entered on September 8, and asked Gordon for his interpretation.

Gordon explained that he declined to comment because he had not yet had an opportunity to investigate and analyze the order.

That exchange is relevant to the chronology. The filing restriction was raised during the same conference in which Gordon sought information concerning Harris's authority to authorize the August 14 declination.

The email also describes Gordon asking about other matters for which he had requested information, including whether Webster had consulted his client. Gordon memorialized his understanding that Webster stated the United States had no position on those matters.

The statement concerning those other matters should be understood in its context. Gordon separately memorialized Webster's response concerning Harris's authorization of the declination.

**C. Webster called back and referred to Senior Judge J. Michael Seabright**

At approximately 10:32 a.m., Webster called Gordon back. Gordon's email identifies the second conversation as continuing until approximately 10:35 a.m.

Gordon memorialized his understanding that Webster advised him that, to the knowledge or understanding of the United States Attorney's Office, matters or filings concerning the subject they had discussed would be handled through Senior Judge J. Michael Seabright.

After Webster referred to Judge Seabright, Gordon raised the October 13, 2026, hearing. The memorialization states that Gordon asked whether Webster was referring to that hearing and that Webster responded that he was unaware of it.

Gordon then stated that the filing he was contemplating would have to be filed in his pending civil case, No. 2:25-cv-04705-AB-SSC.

The sequence matters. Webster's callback introduced the reference to Judge Seabright. Gordon then brought the October 13 hearing to Webster's attention during that same conversation.

The defendants' September 30 reply identifies October 13, 2026, at 2:00 p.m. as the hearing on the renewed motion in this proceeding. Dkt. 75 at cover page.

This exchange explains the connection between Gordon's authorization inquiry and his present submission. Gordon is bringing the documented subject matter to the attention of the Court and counsel in the proceeding before Judge Seabright.

**D. The email requested clarification concerning communications and the written record**

Gordon sent the memorialization at 3:18 p.m. on September 8, 2026. It was addressed to Webster and copied to counsel for the California defendants, Samuel E. Sokolsky and Todd Grabarsky.

The email requested clarification concerning whether Webster knew of communications involving the United States Attorney's Office, California counsel, chambers, the Clerk's Office, or other court personnel concerning the timing, issuance, entry, or substance of the September 3 order.

It separately asked whether Webster had communicated with California counsel concerning Gordon's written question about the August 14 declination, Harris's authority, or the September 3 order.

The email expressly stated that Gordon was asking these questions to maintain an accurate written record and was not assuming that such communications occurred.

Gordon also memorialized that Sokolsky, during their separate conference, did not raise or discuss either the September 3 order or the question concerning authority underlying the August 14 declination.

These portions of the email establish the questions Gordon presented and the information he sought. The memorialization supplies a contemporaneous account; answers to its requests must be established through the responsive record.

## V. THE NOVEMBER 2013 FCA RECORD ESTABLISHES THE HARRIS–BIROTTE PROFESSIONAL CONNECTION

### A. The original filing identifies their respective positions

In *United States ex rel. Daniel Ojeda v. Alex Gladkov, D.D.S., Inc.*, No. 2:09-cv-09348-DMG-SH, Dkt. 30, filed November 12, 2013, pages 1–2 identify André Birotte Jr. as United States Attorney and David M. Harris as Assistant United States Attorney.

The attorney identification also lists Leon W. Weidman as Chief of the Civil Division.

The document establishes Harris's professional service within the United States Attorney's Office headed by Birotte. It also establishes their respective positions accurately: the filing identifies Harris as an AUSA and Weidman as Civil Division Chief.

That office was the United States Attorney's Office for the Central District of California.

### B. Harris participated in presenting the governmental consent to dismissal

Page 3 describes the relator's requested dismissal without prejudice and the governmental consent to that dismissal.

Page 4 identifies Harris as the attorney presenting the document for the United States.

The record therefore identifies Harris's participation in an FCA dismissal within the office headed by Birotte.

That professional connection predates the current FCA proceeding in which Birotte adjudicated Gordon's claims and Gordon later questioned Harris's authorization of the Government's declination.

The connection is documented through the original filing's identification of the officials, the subject matter of the governmental action, and Harris's participation in presenting it.

**C. Relevance to Gordon's impartiality objection**

Gordon's moving papers raise a judicial impartiality objection concerning the professional relationship between Birotte and Harris.

Section 455(a) requires judicial disqualification when a judge's impartiality might reasonably be questioned. Gordon requests evaluation of that objection against the actual relationship records and the particular authorization dispute.

The November 2013 filing supplies documentary support for the professional connection. The court responsible for the recusal question must determine its legal significance in light of the complete circumstances.

The appointment question addressed in *Jackson*, Harris's participation in authorizing the declination, and Gordon's judicial impartiality objection have separate legal foundations. Their factual intersection explains why Gordon presents them together.

The filing-review designation supplies no determination of the merits of the professional-relationship objection or the particular authorization question.

Gordon's current proceeding before Birotte is now associated with Ninth Circuit No. 26-6605, opened October 7, 2026. This development supplies the current appellate connection to the district proceeding described here.

## VI. THE OCTOBER 2023 DECLINATION AND SUBSEQUENT DEFENDANT STATUS ESTABLISH THE HARRIS–STATON LITIGATION CONNECTION

### A. The earlier FCA case was assigned to Judge Staton and referred to Magistrate Judge Rocconi

Gordon's earlier FCA proceeding, *The United States of America et al. v. Gavin Newsom et al.*, No. 2:23-cv-06727-JLS-MAR, was assigned to Judge Josephine L. Staton and referred to Magistrate Judge Margo A. Rocconi. These assignment and referral records identify their respective judicial roles in the earlier proceeding.

The United States filed its Notice of Election to Decline Intervention and Request for Unsealing on October 20, 2023. Dkt. 29.

The filing identifies E. Martin Estrada as United States Attorney and Harris as Assistant United States Attorney and Chief of the Civil Division. It bears the signature of Assistant United States Attorney Karen Paik.

This document establishes Harris's identified supervisory position within the governmental attorney group associated with the declination in Gordon's earlier FCA case.

The assignment to Staton and referral to Rocconi identify the judicial setting in which that earlier governmental filing occurred. Gordon presents those roles as part of the connected procedural history.

**B. Harris and Staton subsequently became defendants in Gordon's litigation**

Gordon subsequently brought litigation in No. 2:24-cv-05384-MWF in which Harris and Staton were named as individual-capacity defendants.

The October 7, 2026 docket report identifies their defendant status and the related appeal, Ninth Circuit No. 25-1190.

The appellate party record supplied by Gordon identifies Harris and Staton as appellees in No. 25-1190.

The Ninth Circuit case-opening entry identifies February 25, 2025 as the date that appeal was opened.

This chronology preserves the distinction Gordon has emphasized: Harris's participation in the earlier FCA proceeding preceded his defendant status in the later litigation. The later defendant status forms part of the circumstances surrounding his subsequent official participation in matters involving Gordon.

**C. Harris's defendant status preceded the August 2025 authorization**

By the time of the August 14, 2025, declination in Gordon's current FCA case, Harris had already been named as a defendant in Gordon's related litigation.

The September 8, 2026 memorialization then identifies Harris as the official whom Gordon understood Webster to identify as authorizing that declination.

Gordon presents this sequence as the factual foundation of his conflict objection: an official who was already an adverse party in Gordon's litigation subsequently participated in authorizing a governmental filing affecting Gordon's FCA proceeding.

The legal effect of that participation requires examination under the applicable conflict and authorization standards. The chronology identifies the issue for adjudication and informs counsel of the supporting documentary record.

**D. The conflict objection and delegation inquiry address separate aspects of the same act**

The source of an official's authority and the propriety of that official's participation are separate questions.

Gordon's delegation inquiry asks what authority supported Harris's authorization of the August 14 filing. His conflict objection asks what effect Harris's adverse-party status had on his participation in that decision.

The defendants' reply in this proceeding supplies a relevant distinction between an official position and authority actually conferred. Dkt. 75 at 9–10. Gordon's records add the separate circumstance of the asserted authorizing official's defendant status in litigation brought by the affected relator.

Gordon presents the facts for judicial evaluation. The documentary chronology permits counsel to identify each issue and examine the governing standard applicable to it.

The earlier assignment to Staton and referral to Rocconi, Harris's subsequent defendant status, and the later proceeding before Birotte identify distinct parts of

the connected history. Gordon presents each official's role separately so that counsel can evaluate the documents and objections accurately.

## VII. THE FILING AND ENTRY CHRONOLOGY EXPLAINS GORDON'S CONTINUING REQUEST FOR ADJUDICATION

### A. The motion and judicial-notice request were submitted September 21

The civil docket identifies Gordon's motion for reconsideration and vacatur and concurrent judicial-notice request as filed September 21, 2026.

The motion was noticed for October 23, 2026, at 10:00 a.m. before Judge Birotte.

The docket records entry of both documents on October 6, 2026, as Dkts. 93 and 94.

The distinction between the recorded filing date and entry date matters to Gordon's account of his efforts to obtain a response and adjudication. The documents identify September 21 as the filing date, while their entry on the docket occurred later.

### B. The September 30 order authorized filing of documents received September 21

Dkt. 95 is dated September 30, 2026, and entered October 6, 2026.

Its docket description states that the Court received documents entitled "Notice, Request" from Gordon on September 21 and ordered that the presented documents be filed in the case.

The documented sequence is as follows:

First, the reconsideration submissions were received and bear a recorded filing date of September 21, 2026.

Second, Gordon filed his notice of appeal on September 29, 2026.

Third, the Court issued the order authorizing filing on September 30, 2026.

Fourth, the notice of appeal was entered on October 2, 2026.

Fifth, the motion, judicial-notice request, and filing order were entered on October 6, 2026.

Sixth, on October 7, 2026, the Ninth Circuit confirmed receipt of Gordon's notice of appeal from No. 2:25-cv-04705-AB-SSC and opened appellate case No. 26-6605. The case-opening entry was entered at 4:52 p.m., followed by a briefing schedule at 4:57 p.m.

The October 7 entry resolves Gordon's previously stated concern about whether his notice of appeal had reached the appellate clerk. The preceding filing and entry chronology remains relevant to his account of the delay and its practical effects.

The September 30 order's docket description authorizes filing. It does not state a determination of the merits of Gordon's authorization, conflict, or impartiality objections.

**C. Gordon's concern is the practical effect on his opportunity to obtain a response**

Gordon sought a governmental response to the authorization question and to his reconsideration submissions. He identifies October 2 as the opposition date

associated with the October 23 hearing and reports that the United States did not submit the response he sought.

The chronology raises a practical issue concerning the public record available when that response was expected. The September 21 submissions were entered October 6.

Gordon does not know whether the absence of the documents from the docket explains the United States' failure to respond. He presents the chronology because it bears on his effort to secure a response and obtain adjudication of the authorization issue.

His stated concern is the harm to his opportunity to be heard. The delay in entry, the application of filing review, and the unresolved requests for information form part of the procedural record he wants counsel to understand.

The significance of these events should be evaluated against the actual service records, orders, communications, and docket entries. The chronology itself does not require an inference about motive.

**D. The authorization question remains identifiable despite the procedural dispute**

The underlying question remains whether the August 14, 2025, governmental act was authorized by an official possessing the relevant authority and properly participating in that decision.

The filing and entry chronology explains Gordon's efforts to obtain consideration of that question. It supplements the substantive authorization record by

identifying when the challenge was submitted and when the supporting documents were entered.

Gordon presents this procedural account so that counsel can understand both the governmental act he challenges and the course of his attempt to obtain adjudication.

The October 7 opening of appeal No. 26-6605 updates this account. It confirms the appellate clerk's receipt of the notice and establishes the new appellate docket number, while leaving the merits and scope of appellate review for determination in that proceeding.

## VIII. TANGIPA, THE APPEALS, AND THE SUPREME COURT APPLICATIONS SHOW THE CONTINUING CONNECTION AMONG THE PROCEEDINGS

### A. The Tangipa submission previously presented the Staton overlap

On December 19, 2025, Gordon submitted a proposed intervention motion in *Tangipa v. Newsom*, No. 2:25-cv-10616-JLS-WLH-KKL.

That motion identifies Staton's membership on the three-judge court, her earlier assignment in Gordon's FCA proceeding, and her appellee status in Ninth Circuit No. 25-1190. Motion at PDF pages 4, 9–10.

The motion documents Gordon's prior presentation of these intersections. The underlying assignment and party records establish the positions themselves.

For counsel receiving this brief, the *Tangipa* submission demonstrates that Gordon had previously organized and presented the judicial overlap in a separate proceeding involving Newsom.

**B. The appellate proceedings have distinct origins**

The proceedings discussed here follow identifiable appellate routes.

District case No. 2:24-cv-05384-MWF is associated with Ninth Circuit No. 25-1190. That proceeding supplies the defendant and appellee status involving Harris and Staton discussed above.

Gordon's current FCA proceeding, No. 2:25-cv-04705-AB-SSC, assigned to Judge André Birotte Jr., is now associated with Ninth Circuit No. 26-6605, opened October 7, 2026. This appeal provides the current appellate connection to the proceeding in which Gordon challenges the August 14, 2025 governmental filing and presents his authorization and impartiality objections.

District case No. 2:24-cv-07938-RGK is associated with Ninth Circuit No. 25-1250. That appeal is the underlying appellate proceeding identified in Supreme Court application No. 26A167.

District case No. 2:25-cv-12427-SVW-MAA is associated with Ninth Circuit No. 26-4761. That proceeding concerns Gordon's continuing injunction and three-judge-court dispute.

Ninth Circuit No. 26-1797 is the underlying appellate proceeding identified on the Supreme Court docket for application No. 26A36.

These mappings allow counsel to distinguish the procedural routes while understanding Gordon's presentation of their factual and judicial intersections.

The earlier FCA proceeding assigned to Staton and referred to Rocconi supplies part of the antecedent judicial history. The current proceeding before Birotte and

newly opened appeal No. 26-6605 supply the present district and appellate connection.

**C. The September 22 motion and October 2 reply continue the interim-relief dispute**

Gordon's September 22, 2026, emergency motion in No. 26-4761 arises from the proceeding before Judge Stephen V. Wilson, No. 2:25-cv-12427-SVW-MAA.

The motion connects that proceeding to Gordon I, challenges descriptions of the earlier judicial record, raises the three-judge-court question under 28 U.S.C. § 2284, and identifies earlier appellate efforts in No. 26-1797. Dkt. 14.1 at PDF pages 11–12 and 21–26.

Gordon's October 2 reply continues the request for temporary administrative relief and an injunction pending appeal.

These filings establish the continuing procedural setting in which Gordon is seeking review and interim relief. Their particular claims remain governed by the records and jurisdiction of those proceedings.

**D. The renewed Supreme Court applications were distributed for October 9**

Supreme Court application No. 26A36 arises from Ninth Circuit No. 26-1797. The docket records the initial application, denial by Justice Kagan, renewal to the Chief Justice, and distribution for the October 9, 2026 conference.

Application No. 26A167 arises from Ninth Circuit No. 25-1250. Its docket likewise records the renewed application and distribution for the October 9 conference.

The approaching conference explains the timing of Gordon's present effort to provide counsel with a complete and organized account. The applications and this proposed amicus submission have separate procedural purposes, while the connected records explain Gordon's continuing interest.

The October 7 opening of appeal No. 26-6605 adds Gordon's current FCA appellate proceeding to that account. It does not alter the separate appellate origins of Supreme Court applications Nos. 26A36 and 26A167.

## IX. REQUEST FOR LEAVE AND PURPOSE OF PLACING THE INFORMATION IN THE RECORD

Gordon respectfully requests leave to file this brief so that the governmental authorization questions and supporting relationship records are presented in this proceeding and available to counsel.

The documents identify a specific governmental act, the official whom Gordon understood Webster to identify as authorizing that act, that official's prior defendant status, and professional relationships relevant to Gordon's pending objections.

The September 8 memorialization additionally records Webster's reference to Senior Judge Seabright and Gordon's ensuing question about the October 13 hearing. That exchange explains why Gordon is presenting this information here.

Gordon offers this organized record in connection with the distinction between appointment, delegated authority, direct participation, and supervision addressed in *Jackson* and the parties' current briefing. The defendants' September 30 reply makes that distinction explicit. Gordon's contribution supplies a dated civil filing and a contemporaneous memorialization identifying its asserted authorizing

official, allowing counsel to understand the particular authorization question presented in his related proceedings.

His requests for adjudication of the civil authorization and impartiality objections remain in the proceedings where those objections have been presented.

The additional assignment records identify the earlier FCA proceeding before Judge Staton and Magistrate Judge Rocconi. The professional-relationship records identify Harris's service in the United States Attorney's Office for the Central District of California, then headed by United States Attorney Birotte. The subsequent litigation identifies Harris's and Staton's defendant and appellee status.

The October 7, 2026, case-opening entry confirms that Gordon's current proceeding before Birotte is now associated with Ninth Circuit No. 26-6605. This development completes the present account of the notice's receipt by the appellate clerk and adds the newly opened appeal to the connected procedural history.

Through filing and service, Gordon seeks to ensure that counsel have the underlying chronology, document references, and case connections necessary to understand his submission. He respectfully requests permission to place that account in the record.

Dated: October 7, 2026

Respectfully submitted,

Carl Gordon

Carl Gordon
Proposed Amicus Curiae, Pro Se
8306 Wilshire Blvd., No. 792
Beverly Hills, CA 90211
universityofthehood@gmail.com
(310) 926-3939

**CERTIFICATE OF COMPLIANCE**

I, Carl Gordon, certify that the accompanying proposed amicus curiae brief contains 5520 words, as calculated by the word-processing program used to prepare it, excluding the portions exempted by Central District of California Local Rule 11-6.1. The brief complies with that rule's 7,000-word limit.

Dated: October 7, 2026

Respectfully submitted,




Carl Gordon
Proposed Amicus Curiae, Pro Se
8306 Wilshire Blvd., No. 792
Beverly Hills, CA 90211
universityofthehood@gmail.com
(310) 926-3939

**PROOF OF SERVICE**

I, Mae Gordon, declare as follows:

1. I am employed in the City and County of Los Angeles, State of California. I am over the age of eighteen (18) years and am not a party to this action. My address is 1125 South Holt Avenue, Apt. 3, Los Angeles, California 90035.

2. On October 7, 2026, I transmitted true and correct copies of the following documents by electronic mail:

**MOTION OF CARL GORDON FOR LEAVE TO FILE AMICUS CURIAE BRIEF**, together with the accompanying **PROPOSED AMICUS CURIAE BRIEF OF CARL GORDON CONCERNING APPOINTMENT, DELEGATION, GOVERNMENTAL AUTHORIZATION, AND CONNECTED PROCEEDINGS** and their attachments.

3. I sent the documents as email attachments to the following counsel at the addresses listed below:

**Counsel for the United States**

Stephen T. Merrill
United States Attorney's Office
Email: stephen.merrill@usdoj.gov

Alexander P. Robbins
United States Attorney's Office
Email: alexander.p.robbins@usdoj.gov

**Counsel for Defendant Jaime Hector Ramirez**

Ayah Sarsour
Federal Public Defender's Office
Email: ayah_sarsour@fd.org

James A. Flynn
Office of the Federal Public Defender
Email: james_flynn@fd.org

**Counsel for Congressional Amici**

Carey R. Dunne
Free and Fair Litigation Group, Inc.
Email: carey@freeandfair.org

Monica P. Folch
Free and Fair Litigation Group, Inc.
Email: monica@freeandfair.org

Matthew Seligman
Grayhawk Law
Email: matthew@grayhawklaw.com

4. I also transmitted a separate informational copy by email to:

The Honorable Lloyd Doggett
United States House of Representatives
Email: lloyd.doggett@mail.house.gov

5. The email to counsel for the congressional amici requested that they forward the documents to each of their six clients: Lloyd Doggett, Wayne Gilchrest, Stephen Lynch, Frank Pallone, Bennie Thompson, and Nydia Velázquez. This declaration confirms transmission to the listed email addresses and does not represent that counsel completed that forwarding.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on October **7**, 2026, at Los Angeles, California.

Mae Gordon