AMY M. KARLIN (Bar No. 150016)
Interim Federal Public Defender
JAMES ANGLIN FLYNN (Bar No. 337608)
Email: james_flynn@fd.org
AYAH A. SARSOUR (Bar No. 340280)
Deputy Federal Public Defenders
321 East 2nd Street
Los Angeles, CA 90012-4202
Telephone: (213) 894-2854
Fax: (213) 893-0081

Attorneys for Defendant
JAIME HECTOR RAMIREZ

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

UNITED STATES OF AMERICA,

*Plaintiff*,

v.

JAIME HECTOR RAMIREZ,

*Defendant*.

Case No. 5:25-cr-264-SSS

**Defendant's Opposition to the Government's Motion for Stay Pending Appeal**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................... iii
INTRODUCTION .................... 1
ARGUMENT .................... 2
I. The government has not made a strong showing on the merits. .................... 2
I.A. The first-assistant backfilling theory. .................... 2
I.B. The FVRA's exclusivity provision. .................... 3
I.C. Application of *Jackson* & the just-one-stick theory. .................... 4
I.D. Legally identical delegations. .................... 4
I.E. The seniormost attorney. .................... 5
I.F. Workability. .................... 6
II. The government has failed to show irreparable injury. .................... 8
II.A. The government fails even to identify any specific injury. .................... 8
II.B. The government's track record undermines its claims. .................... 9
III. The government has not carried its burden with respect to Mr. Ramirez and Mr. Tran's interests. .................... 12
III.A. This factor does not merge into the public interest. .................... 12
III.B. The defendants will be injured just like the government. .................... 13
IV. The public interest weighs against a stay. .................... 14
V. The *Jackson* panel's stay ruling weighs against a stay here. .................... 15
CONCLUSION .................... 16

# TABLE OF AUTHORITIES

**Cases**

*Cal. Nurses Ass'n v. Mullin*,
No. 26-7139, __ F.4th __, 2026 WL 3268397
(9th Cir. Oct. 30, 2026) (per curiam) .......... 8, 9

*California v. Mullin*,
183 F.4th 42 (1st Cir. 2026) .......... 12

*Cmty. Legal Servs. in E. Palo Alto v. U.S. Dep't of Health & Hum. Servs.*,
137 F.4th 932 (9th Cir. 2025) .......... 8

*In re Grand Jury Subpoenas to Office of N.Y. State Att'y Gen.*,
188 F.4th 595 (2d Cir. 2026) .......... 3, 6

*League of Women Voters of U.S. v. Newby*,
838 F.3d 1 (D.C. Cir. 2016) .......... 14

*Loper Bright Enters. v. Raimondo*,
603 U.S. 369 (2024) .......... 3

*Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.*,
831 F. Supp. 3d 1012 (D. Or. 2026) .......... 13

*New Process Steel, L.P. v. NLRB*,
560 U.S. 674 (2010) .......... 6

*Nken v. Holder*,
556 U.S. 418 (2009) .......... 1, 2, 12, 15

*NLRB v. SW Gen., Inc.*,
580 U.S. 288 (2017) .......... 3

*Novedades y Servicios, Inc. v. Fin. Crimes Enforcement Network*,
181 F.4th 961 (9th Cir. 2026) .......... 9, 14

*Rodriguez v. Robbins*,
715 F.3d 1127 (9th Cir. 2013) .......... 8

*Thakur v. Trump*,
163 F.4th 1198 (9th Cir. 2025) .......... 8, 13

*U.S. Navy Seals 1-26 v. Biden*,
27 F.4th 336 (5th Cir. 2022) (per curiam) ........ 13

*United States v. Giraud*,
160 F.4th 390 (3d Cir. 2025) ........ 3, 6, 11

*United States v. Jackson*,
187 F.4th 1198 (9th Cir. 2026) ........ 2, 3, 4, 5, 7, 10, 15

*United States v. Ramirez* (*Ramirez II*),
No. 5:25-cr-264, 2026 WL 3223483 (C.D. Cal. Oct. 27, 2026) ........ 2, 5, 6

*Washington v. Reno*,
35 F.3d 1093 (6th Cir. 1994) ........ 14

*Washington v. Trump*,
847 F.3d 1151 (9th Cir. 2017) (per curiam) ........ 8

**Statutes**

28 U.S.C. § 510 ........ 6

5 U.S.C. § 3347 ........ 3, 7

5 U.S.C. § 3348 ........ 7

**Rules**

9th Cir. R. 41-1 ........ 15

Fed. R. App. P. 41 ........ 15

L.R. 7-20 ........ 11

L.R. 7-3 ........ 11

**Regulations**

28 C.F.R. § 0.137 ........ 6

**Other Sources**

Gov't's Mot. to Dismiss, *United States v. Recinos-Valdez*,
No. 26-6510 (9th Cir. Oct. 30, 2026), ECF No. 6 ........ 11

Gov't's Mot. to Stay, *United States v. Jackson*,
No. 25-6214 (9th Cir. Aug. 20, 2026), ECF No. 62 ........ 10

Gov't's Mot. to Stay, *United States v. Recinos-Valdez*,
No. 3:25-cr-10 (D. Nev. Oct. 2, 2026), ECF No. 141 ........ 11

Minutes of Proceedings, *United States v. Lanier*,
No. 2:19-cr-327 (D. Nev. Sept. 11, 2026), ECF No. 506 ........ 10, 11, 14

Order, *United States v. Garcia*,
No. 2:25-cr-227 (D. Nev. Oct. 23, 2025), ECF No. 57 ........ 15

Order, *United States v. Recinos-Valdez*,
No. 3:25-cr-10 (D. Nev. Sept. 30, 2026), ECF No. 139 ........ 10, 11, 14

## INTRODUCTION

There is no urgent or compelling need for Bilal Essayli to participate in these two cases while the government appeals his disqualification. The government itself has consistently sought to deny and downplay Essayli's role in prosecuting Mr. Ramirez and Mr. Tran. *E.g.*, Dkt. 74, at 19; Dkt. 89, at 9. It nowhere explains why his involvement is now so critical that the Court should sign off on that continued illegality.

With meager justification for that proposition, the government toboggans down a slippery slope of irrelevant concerns. It fears Essayli being "judicially ejected from office." Dkt. 89, at 8. But that is simply not the relief this Court granted, after the government successfully opposed district-wide disqualification in an earlier stage of this litigation. And it asks questions like whether Essayli can post on social media or talk to the press. *Id.* at 20. The Court did not address those questions because they were not raised and are not relevant. (Besides, Sigal Chattah has continued to tweet via her Department of Justice account even after being disqualified from two cases in Nevada. No one has challenged her ability to do so.)

By sweeping well beyond these two cases, the government's argument becomes self-defeating. It pointedly asks why Essayli cannot exercise the functions "customarily performed by the head of the office." *Id.* at 20. In other words, why can Essayli not be the de facto U.S. Attorney? The answer is the FVRA.

Under the *Nken* factors, the government has not carried its burden. It undoubtedly believes it will win on the merits in the Supreme Court, but it must make a strong showing to back up that belief. It comes up short on supporting authority. The government's claim that it will be irreparably injured without a stay is thoroughly undermined by its conduct across the country, including its acquiescence in the two

disqualification orders now in force in Nevada. Those Nevada cases are headed to trial in orderly fashion; the sky has not fallen. The government's motion should be denied.

## ARGUMENT

### I. The government has not made a strong showing on the merits.

The government thinks the Supreme Court will walk back the holdings in *Jackson* and *Ramirez II*. It raises roughly half a dozen issues in this regard, but its motion offers scant authority, while ignoring rather than rebutting what three circuits have now said are the flaws in its arguments. That is not a "strong showing that it is likely to succeed on the merits." *Nken v. Holder*, 556 U.S. 418, 426 (2009) (cleaned up).

#### I.A. The first-assistant backfilling theory.

Without case law to support its backfilling theory for post-vacancy first assistants, the government points to what it says was previously "the universally accepted interpretation of 5 U.S.C. § 3345(a)(1)." Dkt. 89, at 12. For that supposedly universal view, it relies on past practices and the 2001 opinions of the Department of Justice's Office of Legal Counsel and the Government Accountability Office. *Id.*

But as the Court knows, that reliance has been rejected by every appellate court to consider it. The OLC opinion "is inconsistent with earlier executive interpretations," which the government's motion here omits, "and it relies on reasoning that has since been rejected. We therefore accord it—and executive practice following it—no weight." *United States v. Jackson*, 187 F.4th 1198, 1212 (9th Cir. 2026), *cert. pending*, No. 26-304.[1] Moreover, the fact that "the Executive branch has pushed the limits of the

---

[1] *Accord In re Grand Jury Subpoenas to Office of N.Y. State Att'y Gen.*, 188 F.4th 595, 609 (2d Cir. 2026), *cert. pending*, No. 26-348; *United States v. Giraud*, 160

FVRA since its enactment proves only that the original mischief the statute was enacted to curtail persisted, not that Congress blessed it." *Grand Jury*, 188 F.4th at 609.

The government has not even mentioned that reasoning: it repeats its rejected arguments and ignores the reasons they were rejected. *See* Dkt. 89, at 12. The Ninth Circuit was careful to ground its reasoning in recent Supreme Court jurisprudence, concerning both agency deference and the FVRA.[2] The Supreme Court is extremely likely to agree with that careful application of its precedent, and the government has made no strong showing to the contrary.

**I.B. The FVRA's exclusivity provision.**

The government next relies on a circuit split over interpreting the FVRA's exclusivity provision at 5 U.S.C. § 3347. Dkt. 89, at 12–13. But the Federal Circuit stands alone on the side of the split opposite *Jackson*, *Giraud*, and *Grand Jury*. *Id.* And the Federal Circuit's decision was based on an unfortunate error of statutory misquotation, wherein that Court overlooked statutory language that defeats the government's interpretation. Because the Federal Circuit panel apparently just missed that critical language, its decision "is not persuasive." *Giraud*, 160 F.4th at 405; *accord Jackson*, 187 F.4th at 1215; *Grand Jury*, 188 F.4th at 612.

Again, the government engages with none of this. Dkt. 89, at 12–13. In failing to do so, it has not carried its strong-showing burden. Even if the Supreme Court steps in to adopt a nationwide interpretation, it is highly likely to correct the Federal Circuit's

---

F.4th 390, 400 (3d Cir. 2025), *reh'g en banc denied*, 2026 WL 2162119 (3d Cir. Jan. 26, 2026).

[2] *Jackson*, 187 F.4th at 1212–13 (citing *Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024); *NLRB v. SW Gen., Inc.*, 580 U.S. 288 (2017)).

innocent but manifest mistake, not adopt it.

**I.C. Application of *Jackson* & the just-one-stick theory.**

The government complains that this Court adopted a functional standard for identifying a de facto U.S. Attorney, rather than the standard the government purports to glean from *Jackson*. In the government's view, *Jackson* adopted an "'all' standard," under which an appointee is an unlawful de facto U.S. Attorney if and only if he is delegated "*all* the functions and duties" of that vacant office. Dkt. 89, at 13 (quoting *Jackson*, 187 F.4th at 1215). If a delegation withholds just one or a few powers, the government claims it passes muster.

The government mistakenly confuses the facts of *Jackson* with the legal standard it articulated. The facts of *Jackson* were a wholesale delegation: that's why the Court used the term "all." But *Jackson* nowhere says that a delegation of all powers is the only way to make an unlawful de facto attorney. On the contrary, *Jackson* was rather clear that a wholesale delegation is one "*kind* of de facto appointment" prohibited by the FVRA. 187 F.4th at 1215 (emphasis added). Other "kinds of more limited delegations *might be* permissible," but nowhere does *Jackson* say that all such limited delegations are lawful. *Id.* (emphasis added). Indeed, the *Jackson* Court pointed to boilerplate limitations as an example of another kind of delegation that likely would not pass muster, *id.*—even though they do not encompass "all" powers.

*Jackson* did not adopt the government's just-one-stick theory. No other case law supports that theory, either, and the government has not come close to the required strong showing to support it.

**I.D. Legally identical delegations.**

The government agreed at the recent hearing that the U.S. Attorney powers

mentioned in *Jackson* are non-delegable as a matter of Ninth Circuit law. *United States v. Ramirez* (*Ramirez II*), No. 5:25-cr-264, 2026 WL 3223483, at *8 (C.D. Cal. Oct. 27, 2026). Now hamstrung by that concession, the government attempts to reframe the issue: what matters, in the government's new view, "is not that [the powers] are delegable or non-delegable but that they are *particular to U.S. Attorneys*." Dkt. 89, at 17. These terms seem like synonyms. The government does not explain why any difference might matter, and it cites no case law imposing a distinct particularity analysis.

To the extent there any meaningful differences, the government has waived the argument by failing even to mention it in opposition to the renewed motions. Dkt. 66 (not mentioning particularity); Dkt. 74 (same). Nor has the government raised this issue in its *Jackson* petition, Dkt. 74-5, so there is no likelihood (much less a strong showing) that the Supreme Court will grant review and reverse on this new, undeveloped theory.

**I.E. The seniormost attorney.**

The government revives its puzzling argument that *Jackson* and *Ramirez II* are wrong because *somebody* must be "the seniormost prosecutor in a U.S. Attorney's Office." Dkt. 89, at 19. The government has never said what that made-up title means or why it matters. Essayli is perhaps "seniormost" in the sense that he has been designated first assistant. Other attorneys are more senior in terms of years of experience or tenure with the Department.

The government says the problem with *Ramirez II* is that "*no one* other than a U.S. Attorney (or FVRA acting U.S. Attorney) is ever allowed to be the seniormost prosecutor." *Id.* But *Ramirez II* says nothing like that. Essayli can absolutely continue to be the seniormost attorney in the first-assistant sense, just as others will continue to

be seniormost in terms of experience or tenure.

The actual problem for the government is not *Ramirez II*. It is that no special powers come with being "seniormost." Specifically, being seniormost does not override the FVRA and allow that seniormost person to be de facto U.S. Attorney. This is not a problem imposed by the Court's decision: it was a deliberate, legitimate choice by Congress to enforce its constitutional role in the appointments process. *See New Process Steel, L.P. v. NLRB*, 560 U.S. 674, 687–88 (2010) (respecting "Congress' decision" to restrict agency activity during a vacancy and rejecting the government's argument that "Congress' overriding objective … was to keep the Board operating at all costs"); *Giraud*, 160 F.4th at 406; *Grand Jury*, 188 F.4th at 609–11.

The irony here is that while complaining about perceived judicial micromanagement of the Department of Justice, it is actually the government that is seeking the Court's involvement in that task. *See, e.g.*, Dkt. 89, at 8–9. The government cannot point any de jure source of law for the proposition that assistants (or first assistants) have actually been delegated any supervisory powers. The Attorney General has the statutory *ability* to make some such delegations, 28 U.S.C. § 510—but evidently never has. For instance, the regulation governing first assistants might have attempted to make such a delegation, but it did not. *See* 28 C.F.R. § 0.137. Instead, the government ultimately asks the Court to step in and fill in the blanks by assuming that a broad range of powers vest de facto based on supposed seniority. Dkt. 89, at 18–21. But it is not the Court's role to make up for what the Attorney General has failed to delegate properly.

**I.F. Workability.**

The government argues that the Court's functional analysis is unworkable. But

its argument in that regard turns on a host of issues that are not presented by this case or *Jackson*—and, frankly, are unlikely to be presented in any criminal case. For instance, once disqualified from these cases, could Essayli continue to tweet? Dkt. 89, at 20. Neither defendant here has asked the Court to weigh in on that question. Nor has anyone asked the Supreme Court to do so.

At any rate, this line of argument ultimately undercuts the government's position. The government says Essayli is not a de facto U.S. Attorney because he is just like "*any other* Special Attorney or AUSA." *Id.* But then it pivots to the concern that he might not be permitted to do things that are *unlike* the duties of any other AUSA: things that are "customarily performed by the head of the office." *Id.*

This dissonance reveals what the government is truly after. The Attorney General could have tried to narrowly delegate to Essayli the power to supervise just these two cases. But that would not be enough: the government wants to appoint a functional "head of the office," not an ordinary line attorney. *Id.* It wants a de facto U.S. Attorney. That is the result Congress has forbidden. *E.g.*, 5 U.S.C. § 3347(b); *id.* § 3348(b)(1) ("the office shall remain vacant").

Nor can the government make any headway by arguing that the "Department of Justice is unusual among government agencies." Dkt. 89, at 18. That Justice Department exceptionalism was precisely what motivated Congress to enact the FVRA in the first place. *Jackson* explained this in deep historical detail, 187 F.4th at 1210–12—a mountain of countervailing evidence that the government just ignores. That is not a strong showing.

## II. The government has failed to show irreparable injury.

### II.A. The government fails even to identify any specific injury.

The government asserts it will be injured by an abstract violation of the separation of powers. *E.g.*, Dkt. 89, at 8–9. But it never articulates what that injury will actually be. If a stay is denied, what will the government be unable to do that it could have done with a stay? What is the permanent injury from having someone other than Essayli supervise these cases during the months necessary to resolve the appeal? The government never clearly says, which makes sense considering how much it has downplayed Essayli's role in these cases. *E.g.*, Dkt. 74, at 19; Dkt. 89, at 9.

Ultimately, "the government 'cannot suffer harm from an injunction that merely ends an unlawful practice.'" *Thakur v. Trump*, 163 F.4th 1198, 1205 (9th Cir. 2025) (quoting *Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013), *abrogated on other grounds by Jennings v. Rodriguez*, 583 U.S. 281 (2018)); *accord Cmty. Legal Servs. in E. Palo Alto v. U.S. Dep't of Health & Hum. Servs.*, 137 F.4th 932, 943 (9th Cir. 2025).

And the Ninth Circuit has repeatedly rejected the premise that this sort of abstract "effect on the 'separation of powers' qualifies as irreparable harm at the stay stage." *Cmty. Legal Servs.*, 137 F.4th at 943 (collecting cases). "To the extent that the Government claims that it has suffered an institutional injury by erosion of the separation of powers, that injury is not irreparable." *Cal. Nurses Ass'n v. Mullin*, No. 26-7139, __ F.4th __, 2026 WL 3268397, at *6 (9th Cir. Oct. 30, 2026) (per curiam), *reh'g en banc denied*, 2026 WL 3275856 (9th Cir. Oct. 30, 2026) (quoting *Washington v. Trump*, 847 F.3d 1151, 1168 (9th Cir. 2017) (per curiam)).

Even when the government gets slightly more specific, its arguments ring hollow. For example, it suggests without elaboration that the denial of a stay will "disrupt[]

federal law enforcement." Dkt. 89, at 9. But how? Which laws will the federal government be unable to enforce during the course of this appeal? The government must do more than make "speculative assertions" about abstract harms. *Novedades y Servicios, Inc. v. Fin. Crimes Enforcement Network*, 181 F.4th 961, 981 (9th Cir. 2026) (holding that the government had failed to show "harms [to] the government's ability to 'combat emergent threats' because the government failed to explain why it could not 'combat emergent threats through other investigatory and prosecutorial tools' at the government's disposal"); *accord Cal. Nurses*, 2026 WL 3268397, at *6 ("But the Federal Defendants do not point to evidence explaining that field operations and interviews would be impracticable or impossible to conduct under the preliminary injunction's constraints.").

The government also remarks that courts do not dictate who will serve as federal prosecutors. Dkt. 89, at 9. But the Court here is not purporting to dictate who will serve. Instead, it is enforcing limits chosen by Congress about who *may not* serve, and the Appointments Clause gives Congress every right to set such limits. The Executive remains free to choose whom it wishes within those bounds. And to the extent that the Executive is harmed in some way by the vacancy itself, that is the self-inflicted result of its failure to fill the office lawfully.

To the extent the Court considers the government's claims of abstract injury, they collapse onto the first factor, the merits. There is no separation-of-powers injury if, as the Court has held, Essayli's service violates the FVRA. The government has made neither a strong showing on those merits nor identified a cognizable, irreparable injury.

**II.B. The government's track record undermines its claims.**

The government cries wolf when it contends that government operations will be

disrupted absent a stay. Its disingenuous position is betrayed both by the reality on the ground in Nevada and by the government's own conduct since *Jackson*.

First, consider the state of play in Nevada. There has been no flood of disqualification orders since *Jackson*, nor any other disarray. Instead, counsel is aware of two currently in-force orders disqualifying Ms. Chattah.[3] In *Recinos-Valdez*, trial is set to proceed on December 1, 2026. In *Lanier*, trial has been delayed until next year, because government counsel will be traveling on the previous date. The government has been proactively accommodated in Nevada, not irreparably injured.

Second, consider the government's own conduct in response to court rulings on this issue. Most importantly, the government's voluntary acquiescence in disqualifications elsewhere demonstrates that it will not be injured by disqualification in these two cases, much less irreparably.

**1.** The government told the Ninth Circuit that, absent a stay of *Jackson*'s precedential effects, that precedent would "impair[] the functioning of U.S. Attorney's Offices and the enforcement of criminal law in this Circuit."[4] If that stay-of-precedent was denied, the government told the Ninth Circuit it would "seek emergency relief from the Supreme Court to avoid the destabilizing interim effects" of *Jackson*. *Id.* at 11. The stay was denied, the government sought no such emergency relief, and it has identified no destabilization in the meantime.

---

[3] Minutes of Proceedings, *United States v. Lanier*, No. 2:19-cr-327 (D. Nev. Sept. 11, 2026), ECF No. 506; Order, *United States v. Recinos-Valdez*, No. 3:25-cr-10 (D. Nev. Sept. 30, 2026), ECF No. 139.

[4] Gov't's Mot. to Stay 9, *United States v. Jackson*, No. 25-6214 (9th Cir. Aug. 20, 2026), ECF No. 62.

**2.** After Judge Du issued a disqualification order in *Recinos-Valdez*, the government told her it would "suffer irreparable harm" absent a stay pending appeal.[5] And it argued the public interest would be harmed, because disqualification would interfere with "the proper functioning of the government." *Id.* at 6. But after Judge Du refused a stay, the government declined to renew its motion in the Ninth Circuit—and then dismissed its own appeal from the disqualification order.[6] Trial will proceed with Ms. Chattah disqualified. There is no evidence that the government's "proper functioning" has been jeopardized as a result of the government's voluntary acquiescence in disqualification there.

**3.** The government has declined to seek further review of other on-point opinions and disqualification orders, including in *Lanier*, D. Nev. No. 2:19-cr-327; *Giraud*, 3d Cir. No. 25-2635; *Naviwala*, D.N.J. No. 2:24-cr-99; and *In re Application for an Ex Parte Order to Authorize Disclosure of Tax Returns and Tax Return Information*, N.D.N.Y. No. 25-mc-22. Again, there is no evidence of destabilization from the government's voluntary choice to let those orders stand.

**4.** The government has not complied with the local rules in making this motion. It filed no proposed order. *See* L.R. 7-20. And it neither conferred with defense counsel nor certified that compliance by declaration of counsel, as the rules require. *See* L.R. 7-3 ("Failure to include such a declaration may result in the motion being denied.").

---

[5] Gov't's Mot. to Stay 4, *United States v. Recinos-Valdez*, No. 3:25-cr-10 (D. Nev. Oct. 2, 2026), ECF No. 141.

[6] Gov't's Mot. to Dismiss, *United States v. Recinos-Valdez*, No. 26-6510 (9th Cir. Oct. 30, 2026), ECF No. 6.

**5.** The government has not expeditiously sought appellate relief in these two cases. It waited a week to file its notice of appeal, needlessly delaying the setting of a briefing schedule, and it still has not ordered and designated the hearing transcript.

This is not a track record that evinces genuine irreparable harm. Rather, it demonstrates that there is unlikely to be any meaningful disruption if a stay is denied. Moreover, it demonstrates that even in cases where disqualification is sought, trials can and will proceed once those orders take effect.

Turning back to the more specific issue here—these two cases—the government has shown no risk of injury if a stay is denied in Mr. Ramirez and Mr. Tran's cases. It points to nothing that it would otherwise be able to do absent disqualification, and it identifies no harm in having these cases supervised by someone other than Essayli for a period of months. As to these cases, the government has failed to articulate even a plausible injury, and it has fallen far short of its burden to justify a stay.

## III. The government has not carried its burden with respect to Mr. Ramirez and Mr. Tran's interests.

The government bears the burden on this factor, too. *E.g.*, *California v. Mullin*, 183 F.4th 42, 51 (1st Cir. 2026). Its threadbare analysis does not carry that burden. *See* Dkt. 89, at 9 & n.8.

### III.A. This factor does not merge into the public interest.

The government renews its misconstruction of *Nken*, arguing that whenever the government is a party, the third and fourth factors merge. What is so puzzling is that, in some cases, there might be an argument for merging the *second* and fourth—i.e., for presuming that the government and the public interests align. *Contra infra* § IV.

But that's not what the government is proposing here. Instead, it says the Court

should presume that the third factor, meant to protect *the defendants'* interests, merges and automatically favors the government. Dkt. 89, at 10 n.8; *accord* Dkt. 74, at 22.

The government has made this pitch before, and it has lost. Indeed, the government lost this issue again just months ago, in binding Ninth Circuit precedent that it chose not to disclose to this Court. *Thakur*, 163 F.4th at 1207 n.7 ("To the extent the government argues that the third and fourth factors merge, that is so when the government is the party opposing a stay, rather than the party seeking one, as it is here.").[7]

**III.B. The defendants will be injured just like the government.**

As explained above, the government contends it will suffer an on-going, irreparable harm if disqualification takes effect, because it will violate the separation of powers. Dkt. 89, at 8–9. And as noted, that argument assumes the government is correct on the merits.

But if the government is wrong on the merits, the same persistent injury will be inflicted on the defendants. They will continue to be prosecuted by an official whose service tramples the separation of powers, the Senate's constitutional rule, and the statutory limits validly imposed on the Executive by Congress. As the defense has previously explained, that is a substantial injury for which the defendants are entitled to

---

[7] *See also U.S. Navy Seals 1-26 v. Biden*, 27 F.4th 336, 353 (5th Cir. 2022) (per curiam) (cleaned up) ("That is mistaken. Those factors merge when the Government is the opposing party, i.e., when the government is not the party applying for a stay. Here the government Defendants are applying for a stay and Plaintiffs are the opposing party. The public interest is therefore distinct."); *Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.*, 831 F. Supp. 3d 1012, 1048 (D. Or. 2026) ("These factors do not merge when the government is the party seeking a stay.").

relief. *E.g.*, Dkt. 38, at 33–36; Dkt. 75, at 8.

Ultimately, both these factors—irreparable injury to the government and substantial injury to the defendants—collapse onto the merits. The government has failed to carry its burden to make a strong showing on that first factor, and its arguments on these injury factors add no weight to the scales.

**IV. The public interest weighs against a stay.**

Contrary to the government's conclusory assertion, Dkt. 89, at 9–10 ("the 'public interest' favors the government"), the public interest here weighs against a stay. "There is generally no public interest in the perpetuation of unlawful agency action." *Novedades*, 181 F.4th at 981 (cleaned up) (quoting *League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016)). "To the contrary, there is a substantial public interest 'in having governmental agencies abide by the federal laws that govern their existence and operations.'" *League of Women Voters*, 838 F.3d at 12 (quoting *Washington v. Reno*, 35 F.3d 1093, 1103 (6th Cir. 1994)).

The public here is interested in the orderly administration of justice in this district. The government suggests that some unspecified disarray could arise from allowing disqualification to take effect in these two cases. *E.g.*, Dkt. 89, at 8–9. But *Lanier* and *Recinos-Valdez* are proof that cases can proceed to trial in orderly fashion once disqualification takes effect.

Really, it is the grant of a stay that risks disorder. As the defense has previously explained, so long as the validity of Essayli's service is left unresolved, delays in trials and sentencings are likely to accrue. *See, e.g.*, Dkt. 75, at 8 & n.6 (citing reports from New Jersey). The government inexplicably chides the defense for citing newspaper coverage of the crisis the Executive caused in New Jersey, but it never disputes that

these problems are likely to arise here too if a stay is granted. Dkt. 89, at 10 n.8. And it never says how that state of delay and uncertainty could possibly benefit the public.

## V. The *Jackson* panel's stay ruling weighs against a stay here.

The Ninth Circuit's refusal to withhold the precedential effects of *Jackson* counsels against a stay here. As the defense has previously explained, the Ninth Circuit chose that result fully aware of the government's warnings that allowing the precedent to take effect would disrupt the status quo and "affect the ability of the heads of four U.S. Attorney's Offices within the Ninth Circuit to continue supervising criminal matters." Dkt. 75, at 4. By the government's own telling, the Ninth Circuit deliberately chose to "affect the ability" of Essayli to supervise prosecutions. That deliberate choice weighs against a stay.

The panel's decision to withhold the *Jackson* mandate is not relevant and cannot justify a stay for two reasons. First, the mandate analysis applies distinct and laxer standards than the analysis for a stay under *Nken*. *See, e.g.*, Fed. R. App. P. 41(d)(1) ("a substantial question and … good cause"); 9th Cir. R. 41-1 (providing that motions to stay the mandate in criminal cases "will be denied if the Court determines that the petition for certiorari would be frivolous or filed merely for delay").

Second, the disqualification order in *Jackson* was stayed back in October 2025—before a single appellate court had ruled in any of these cases. Writing on that blank slate, Judge Campbell thought "novel and important issues" warranted a stay.[8] The *Jackson* panel allowed that stay to continue as one effect of the above-cited mandate

---

[8] Order 2, *United States v. Garcia*, No. 2:25-cr-227 (D. Nev. Oct. 23, 2025), ECF No. 57.

analysis. But the slate is no longer blank: a consensus has taken hold among the circuits. The *Jackson* panel was not asked to consider whether new stays are warranted with that consensus now formed. They are not.

## CONCLUSION

Mr. Ramirez respectfully urges the Court to deny the government's motion for a stay pending appeal.

Respectfully submitted,

AMY M. KARLIN
Interim Federal Public Defender

Dated: November 6, 2026 By: */s/ James Anglin Flynn*
JAMES ANGLIN FLYNN
AYAH A. SARSOUR
Deputy Federal Public Defenders

*Attorneys for Defendant*
*Jaime Hector Ramirez*